Merrimack
No. 2005-471

ROBERT L. GARRISON *& a.*

v.

TOWN OF HENNIKER

Argued: March 9, 2006
Opinion Issued: August 2, 2006

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Silas Little* on the brief and orally), for the plaintiffs.

*Soule, Leslie, Kidder, Sayward*, of Salem (*Diane M. Gorrow* on the joint brief), for the defendant.

28

*Shaheen & Gordon, P.A.*, of Concord (*Arpiar G. Saunders, Jr.* and *Karyn P. Forbes* on the joint brief, and *Mr. Saunders* orally), for the intervenor, Green Mountain Explosives, Inc.

DUGGAN, J. The intervenor, Green Mountain Explosives, Inc. (GME), appeals an order of the Superior Court (*McGuire*, J.) reversing the decision of the Henniker Zoning Board of Adjustment (ZBA) granting GME two conditional variances. We affirm.

The following facts were found by the superior court or are evident from the record. GME manufactures explosives for use in mining, quarrying and construction. GME proposed to lease a 1,617-acre parcel owned by the Vincent Barletta Trust for purposes of storing and blending explosives. The parcel was comprised of eighteen separate lots. According to GME's proposal, an explosives storage and blending facility would be centrally located on twenty acres. The remaining 1,597 acres would surround the facility, acting as a buffer zone, as required by Bureau of Alcohol, Tobacco and Firearms (ATF) regulations.

The parcel is located in a district zoned rural residential. On October 7, 2004, GME, acting on behalf of the Vincent Barletta Trust, filed an application with the ZBA for two variances. First, it sought a variance to allow the proposed commercial use where only a residential use is permitted. Second, it sought a variance to allow the storage and blending of explosive material where injurious or obnoxious uses are prohibited.

The ZBA conducted a hearing at which GME made a video presentation describing the nature of its business and providing information on safety issues related to its operations. Several employees, GME's attorney, and Steven Keach, a professional engineer retained by GME, spoke in favor of granting the variances. Following GME's presentation, members of the public who attended the hearing questioned GME's representatives as to the proposed use of the property.

Board deliberations followed the public question period, during which board members and Laura Scott, a town-planning expert retained by the ZBA, discussed GME's application. At the close of the hearing, the ZBA voted three to two to grant the variances subject to two conditions. First, GME had to merge the eighteen lots into a single 1,617-acre parcel, subject to approval by the ZBA. Second, the variances would terminate if GME discontinued the proposed use.

Plaintiffs Robert L. Garrison and Cheryl Morse, landowners whose properties abut the proposed site, requested a rehearing before the ZBA. The ZBA denied the requests and the plaintiffs appealed to the superior court pursuant to RSA 677:4 (Supp. 2005). The superior court reversed the

ZBA decision, ruling that it was unreasonable because the evidence before the ZBA failed to demonstrate unnecessary hardship.

Specifically, the superior court found that:

> The problem with GME's application and the record in this case is that, while they support a conclusion that the zoning restrictions interfere with GME's proposed use of the property, they do not support a finding that the restrictions interfere with the reasonable use of the property. That is, there is no evidence in the record that the property at issue is different from other property zoned rural residential. While its size may make it uniquely appropriate for GME's business, that does not make it unique for zoning purposes.

The superior court also noted that "[a]lthough the evidence in the certified record and GME's application show that the property is ideal for GME's facility, 'the burden must arise from the property and not from the individual plight of the landowner,'" *quoting Harrington v. Town of Warner*, 152 N.H. 74, 81 (2005).

On appeal, GME raises six issues. It argues that: (1) the superior court erroneously applied the reasonable use requirement for unnecessary hardship that we abrogated in *Simplex Technologies v. Town of Newington*, 145 N.H. 727 (2001); (2) the superior court erroneously required expert testimony to establish unnecessary hardship; (3) there was sufficient evidence to support the ZBA's decision; (4) the superior court erred by not accepting the ZBA's findings as *prima facie* lawful and reasonable, and instead acted as a super zoning board by substituting its own judgment for that of the ZBA; (5) the superior court erred by failing to distinguish between evidence submitted by the applicant to prove uniqueness and evidence submitted to prove that federal and State safety regulations insured that granting the variance would not be contrary to the public interest; and (6) the superior court erred by finding that GME's proposed use was "strikingly inconsistent" with the present zoning. We address each argument in turn.

The superior court's review in zoning cases is limited. *See Fox v. Town of Greenland*, 151 N.H. 600, 603 (2004). Factual findings of the ZBA are deemed *prima facie* lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. *Harrington*, 152 N.H. at 77; RSA 677:6 (1996). The party seeking to set aside the ZBA decision bears the burden of proof in the superior court. *Harrington*, 152 N.H. at 77.

In determining whether the superior court erred by vacating the ZBA's decision, we note that we do not act as a super zoning board. *See id.* at 82. Our inquiry is not whether we would find as the superior court found, but whether the evidence before the superior court reasonably supports its findings. *Id.*

*I. "Unnecessary hardship" standard*

GME first argues that the superior court erroneously applied the pre-*Simplex* standard for unnecessary hardship by requiring that GME demonstrate that the ordinance prevented it from making any reasonable use of the land. We disagree.

■ An applicant seeking a variance must demonstrate that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties. *Harrington*, 152 N.H. at 77; *see* RSA 674:33, I(b) (Supp. 2005).

Prior to our decision in *Simplex*, an applicant seeking to establish the second prong of the variance test, "unnecessary hardship," had to show that the zoning ordinance unduly restricted his use of the land. *See Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130 (1983), *abrogated by Simplex*, 145 N.H. at 731. For unnecessary hardship to exist under the pre-*Simplex* standard for reasonable use, "the deprivation resulting from application of the ordinance must [have been] so great as to effectively prevent the owner from making reasonable use of the land." *Rancourt v. City of Manchester*, 149 N.H. 51, 53 (2003).

■ In *Simplex*, we held that "our definition of unnecessary hardship ha[d] become too restrictive in light of the constitutional protections by which it must be tempered" and adopted an approach "more considerate of the constitutional right to enjoy property." *Simplex*, 145 N.H. at 731. We stated that "applicants for a variance may establish unnecessary hardship by proof that: (1) a zoning restriction as applied to their property interferes with their *reasonable use* of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others." *Id.* at 731-32 (emphasis added). In satisfying the first prong of the *Simplex* test, "applicants no longer must show that the zoning ordinance deprives them of any reasonable use of the land. Rather, they must show that the use for

which they seek a variance is 'reasonable,' considering the property's unique setting in its environment." *Rancourt*, 149 N.H. at 53-54 (citation omitted).

GME argues that "[t]he Superior Court, during most of the oral arguments applied the pre-*Simplex* standard by repeatedly asking whether GME currently had reasonable use of the property." However, the clear language of the superior court's order acknowledges the *Simplex* standard by stating that "[a]pplicants do not have to show that 'the zoning ordinance deprives them of any reasonable use of the land. . . . Rather, they must show that the use for which they seek a variance is reasonable considering the property's unique setting in its environment.'" (*Quoting Rancourt*, 149 N.H. at 53.)

■ GME also argues that the superior court's order "failed to appreciate and correctly apply the *Simplex* hardship criteria to the facts of record." "*Simplex* requires a determination of whether the [unnecessary] hardship is a result of the unique setting of the property." *Harrington*, 152 N.H. at 81. Here, the superior court, after reviewing the record before the ZBA, concluded that GME had failed to prove that the property was "unique for zoning purposes." Specifically, it stated that "there is no evidence in the record that the property at issue is different from other property zoned rural residential." Based upon the language of the order, we are simply not persuaded that the superior court failed to apply the correct standard for unnecessary hardship.

*II. Expert testimony*

■ GME next argues the superior court erroneously required that it present expert testimony to prove that enforcement of the ordinance in this case would result in unnecessary hardship. We disagree with GME's reading of the superior court order. In its order the superior court stated:

> Comments [that the development of the parcel is difficult or unlikely] are not enough to demonstrate that a special condition exists on this land so as to warrant the issuance of the variances given. [*Harrington*, 152 N.H. at 81.] ("[M]ere conclusory and lay opinion concerning the lack of . . . reasonable return is not sufficient [to establish unnecessary hardship]; there must be actual proof . . . .") (quoting *Matthew v. Smith*, 707 S.W.2d 411, [417] (Mo. 1986)[(en banc)]).

In *Harrington*, we discussed what evidence is required to prove unnecessary hardship and cited *Matthew* for the proposition that an

applicant seeking to demonstrate lack of reasonable return must provide "actual proof." *Id.* We stated:

> [Unnecessary hardship] requires a determination of whether the zoning restriction as applied interferes with a landowner's reasonable use of the property. This factor includes consideration of the landowner's ability to receive a reasonable return on his or her investment. [*Matthew*, 707 S.W.2d at 416] .... "[M]ere conclusory and lay opinion concerning the lack of reasonable return is not sufficient; there must be actual proof, often in the form of dollars and cents evidence." *Matthew*, 707 S.W.2d at 417.

*Id.* at 80-81 (citation and ellipses omitted). *Harrington* does not require expert testimony concerning either lack of reasonable return on the applicant's investment or interference with reasonable use. Applicants may show both through lay or expert testimony. *See id.* Indeed, in *Harrington* we upheld the superior court's ruling that the evidence before the zoning board—which consisted entirely of lay testimony—supported the zoning board's decision to grant a variance. *Id.* at 81-82. In this case, the superior court's citation to *Matthew* does not indicate that it reversed the ZBA decision because GME failed to present expert testimony.

### III. Sufficiency of the evidence

GME argues that the evidence before the ZBA was sufficient to support its decision to grant the variances. Specifically, it contends that there was evidence before the ZBA to demonstrate that the property was unique. We disagree.

As discussed above, to demonstrate "unnecessary hardship" applicants must show that "a zoning restriction as applied to their property interferes with their reasonable use of the property, considering the unique setting of the property in its environment." *Simplex*, 145 N.H. at 731-32. The reasonable use factor "is the critical inquiry for determining whether unnecessary hardship has been established." *Harrington*, 152 N.H. at 80. The reasonable use factor "requires a determination of whether the hardship is a result of the unique setting of the property." *Id.* at 81. The applicant must show that "the hardship is a result of specific conditions of the property and not the area in general." *Id.* The property must be "burdened by the zoning restriction in a manner that is distinct from other similarly situated property." *Id.* While this does not require that the property be the only such burdened property, "the burden cannot arise as a result of the zoning ordinance's equal burden on all property in

the district." *Id.* The burden must "arise from the property and not from the individual plight of the landowner." *Id.*

In this case, the following evidence was introduced before the ZBA regarding unnecessary hardship. GME, in its variance application, stated that "the denial of the requested variances would result in an unnecessary hardship to GME." It also stated:

> The current residential zoning interferes with GME's proposed reasonable use for the property. Under current zoning, GME is unable to use the property to conduct its business in any way. The unique characteristics of this property make the proposed use reasonable. The fact that this parcel is extremely large and uninhabited makes it ideal for use by GME. GME must maintain its storage facilities a significant distance from any occupied structures according to [ATF] regulations. The size of the parcel at issue permits GME to meet this legal obligation. For the same reason, the proposed use of the property for storage and blending of explosives is reasonable. The central location of the facility within the proposed [site] will permit the facility to be both a safe distance from any other structures and out of view from any neighbors or the roadway.

The ZBA hearing minutes reflect that professional engineer Steven Keach stated that the property was unique in its environment and that the denial of the requested variances would result in unnecessary hardship. Both ZBA chairman Leon Parker, who had driven through the proposed site earlier in the day, and ZBA town-planning expert Laura Scott testified that the site would be difficult to develop as a residential subdivision.

The superior court concluded that the record evidence did not support the ZBA's decision on unnecessary hardship because it did not demonstrate that the proposed site was unique. In its order, it stated, in pertinent part, that "there is no evidence in the record that the property at issue is different from other property zoned rural residential. While its size may make it uniquely appropriate for GME's business, that does not make it unique for zoning purposes." The superior court also expressly considered the statements of Keach, Scott and Parker. The order provides that these statements did "not demonstrate 'a special condition of the land which distinguishes it from other land in the same area with respect to the suitability for the use for which it is zoned,'" *quoting Ryan v. City of Manchester Zoning Board,* 123 N.H. 170, 173 (1983).

After reviewing the certified record, we agree that the record reasonably supports the superior court's conclusion that the evidence did

not demonstrate uniqueness. GME directs us to no evidence in the record that would demonstrate that the proposed site was different from any other property in the rural residential district. Rather, the record merely demonstrates that the proposed site was large, difficult to develop because of its topography and relatively isolated location, and ideally suited to GME's needs because it could provide a buffer zone as required by the applicable ATF regulations. These factors alone, however, do not distinguish GME's proposed site from any other rural land in the area. *Cf. Harrington*, 152 N.H. at 81.

GME argues further that *Rancourt* squarely controls the outcome of this case. Specifically, it argues that in *Rancourt*, 149 N.H. at 54, the large size, relatively inaccessible location and buffer zone of the property were "special conditions of the property" which provided a basis for granting a variance, and that these same factors provide a basis for granting a variance here. We disagree.

In *Rancourt*, the intervenors purchased a three-acre lot in an area zoned lower-density residential. *Id.* The intervenors then applied for a permit to build a stable for two horses on the rear section of the lot. *Id.* The City of Manchester denied the permit because it had recently amended its zoning ordinance to prohibit livestock, including horses, in lower-density residential districts. *Id.* The zoning board granted the intervenors' request for a variance. *Id.* The abutters appealed the zoning board decision to the superior court, which affirmed the zoning board's decision. *Id.*

We affirmed the superior court's decision, reasoning that "[b]oth the [superior] court and the [zoning board] could rationally have found that the zoning ordinance precluding horses in a [lower-density residential] district interfered with the intervenors' reasonable proposed use of their property, considering its unique setting." *Id.* at 54. We stated that:

> Evidence before the [zoning board] showed that the intervenors' lot was located in a country setting. Evidence before the [zoning board] also showed that the lot was larger than most of the surrounding lots and was uniquely configured in that the rear portion of the lot was considerably larger than the front. The [zoning board] also had evidence that there was a "thick wooded buffer" around the proposed [stables] area. Further, the area in which the intervenors proposed to keep the two horses constituted an acre and a half, which, according to the city's zoning laws, was more land than required to keep two livestock animals.

*Id.* We upheld the zoning board's ruling because the evidence before the ZBA demonstrated that the property was unique in its environment. *Id.*

Like the intervenors in *Rancourt*, GME had to demonstrate that its property was unique in its surroundings. *Id.; see also Harrington*, 152 N.H. at 81. In *Rancourt*, the size, configuration, location and buffer made the property unique, as compared to the surrounding lots. *Rancourt*, 149 N.H. at 54. The evidence presented by GME simply did not demonstrate that its proposed site was similarly unique in its setting.

*IV. Superior court's review*

■ GME argues that the superior court erred by not treating the ZBA decision as *prima facie* lawful and reasonable. The superior court correctly set forth the standard of review in its order, when it wrote that "[a]ll findings of the [ZBA] ... upon all questions of fact properly before the court shall be *prima facie* lawful and reasonable. The order or decision appealed from shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable." The superior court's review, which focused upon whether the ZBA's findings were reasonable in light of the evidence before it, was consistent with this standard. Accordingly, the superior court applied the correct standard of review.

*V. Consistency of Variance With Ordinance*

GME's next claim of error is that the superior court incorrectly found that GME's proposed use was "strikingly inconsistent with the present zoning." However, we need not address this argument because we affirm the superior court's finding that enforcement of the ordinance will not create unnecessary hardship.

*VI. Remaining Issue*

GME's final claim of error is that the superior court failed to distinguish between evidence submitted by the applicant to prove uniqueness and evidence submitted to prove that federal and State safety regulations insured that granting the variance would not be contrary to the public interest. We conclude that this argument lacks merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.