Rockingham
No. 2008-047

RYDER DANIELS & a.

v.

TOWN OF LONDONDERRY & a.

Argued: June 18, 2008
Opinion Issued: July 15, 2008

*Orr & Reno, P.A.*, of Concord (*Jeffrey C. Spear* on the brief and orally), for the petitioners.

*Upton & Hatfield, LLP*, of Concord (*Matthew R. Serge* on the brief and orally), for the defendants.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jennifer L. Parent* and *Kristin M. Yasenka* on the brief, and *Ms. Parent* orally), for the intervenor.

GALWAY, J. The petitioners, Ryder Daniels and Gary Morrissette, appeal an order of the Superior Court (*Nadeau,* J.) upholding the decision of the defendants, Town of Londonderry and the Town of Londonderry Zoning Board of Adjustment (ZBA), allowing the intervenor, Omnipoint Communications, Inc. (Omnipoint), to build a wireless communications tower in an agricultural-residential zone. We affirm.

*I. Background*

The following facts appear in the record. Omnipoint sought one use and two area variances in order to construct a 170-foot monopole telecommunications tower on a residential parcel (the parcel) located in Londonderry's agricultural-residential zone. The parcel, owned by the Meredith P. Beal Revocable Trust, sits at the end of a residential cul-de-sac and consists of approximately thirteen acres, with an abutting twelve acres of undeveloped land, also owned by the Meredith P. Beal Revocable Trust. The petitioners are abutters to the parcel and oppose Omnipoint's applications.

Over the course of six months the ZBA conducted several public hearings and heard testimony from Omnipoint's attorney, project manager and site acquisition specialist, as well as two radio frequency engineers, in support of its applications. Omnipoint presented numerous site maps illustrating the gap in wireless communications coverage surrounding the area, the coverage to be achieved by the proposed tower, and the layout of the proposed compound surrounding the tower, and submitted other pertinent exhibits. In addition, the ZBA heard testimony from an independent radio frequency engineer, who served as a consultant for the ZBA. It also heard testimony from two property appraisers, one hired by Omnipoint and the other by petitioner Daniels, regarding the results of each appraiser's site specific impact study on property value. Several other appraisal studies reflecting towers in other towns were also submitted.

The ZBA ultimately granted the three variances with the following conditions:

> that the tower height shall not exceed one hundred and forty six (146) feet, the tower shall not be lit, the tower shall be moved to the furthest point on the compound away from Hazelnut Drive, the existing tree canopy outside the compound shall be preserved for the length of the lease, granting the Use Variance shall be conditional upon Planning Board approval, there shall be visual screening around the compound, the access road shall be located as presented in plan "locus three" and the tower shall be located as presented in plan "locus three."

The petitioners appealed to the trial court after unsuccessfully moving for rehearing. The trial court affirmed the ZBA's decision, ruling that the record adequately supported a finding that the five variance criteria had been satisfied. This appeal followed.

> The superior court's review in zoning cases is limited. Factual findings of the ZBA are deemed *prima facie* lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable.

*Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 105 (2007) (quotation omitted). The party seeking to set aside the ZBA decision bears the burden of proof in superior court. *Id.* We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 155 N.H. 307, 309 (2007).

On appeal, the petitioners argue that the ZBA's decision was unlawful and unreasonable because the ZBA allowed a federal law, the Telecommunications Act of 1996 (TCA), 47 U.S.C.A. § 332(c)(7) (2001), to preempt its own findings regarding the statutory criteria, or, in the alternative, that Omnipoint had not met the statutory requirements for a variance. We will address each argument in turn.

## II. Consideration of the TCA

The petitioners first argue that the ZBA erroneously construed the TCA to preempt Omnipoint's burden of satisfying the statutory criteria. Specifically, they assert that several statements made by board members during the course of its deliberations demonstrate an overly deferential application of the TCA. We disagree.

■ ■ "The TCA was enacted to expand the availability of wireless telecommunications services and to increase competition in the wireless telecommunications industry." *Nextel Comm. of Mid-Atlantic v. City of Cambridge*, 246 F. Supp. 2d 118, 122 (D. Mass. 2003). However, it "preserves state and local authority over the siting and construction of wireless communication facilities, subject to five exceptions specified in the Act." *Second Generation Props. v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir. 2002). "If a board decision is not supported by substantial evidence . . . or if it effectively prohibits the provision of wireless service . . . then under the Supremacy Clause of the Constitution, local law is pre-empted in order to effectuate the TCA's national policy goals." *Id.* "Overall, the TCA attempts to reconcile the goal of preserving local authority over land use with the need to facilitate nationally the growth of wireless telephone service." *Id.* at 631 (quotations omitted).

The ZBA discussed the TCA's role in its consideration of Omnipoint's applications on numerous occasions throughout the six-month hearing process. Each time, the ZBA accurately addressed the nature of the TCA, and the ongoing duty of Omnipoint to meet the five variance criteria. The ZBA's discussion at the start of its deliberations illustrates its proper understanding of the TCA:

> Larry O'Sullivan: [The TCA is] shadowing what we're doing here but they gotta [*sic*] meet these criteria first and then we'll forgive [*sic*] what the Telecommunications Act has to do . . . . The way I look at this is did they meet the five (5) criteria first? And then we'll talk about what the TCA does, if that's necessary.

> Mike Brown: That's a true statement. They have to . . . you're making a good point that even though the TCA is an umbrella, it is something that we have to keep in mind, the first thing that has to happen is the Board, a consensus of the Board, a majority of the Board who votes on this, needs to be satisfied that all five (5) points of law were met from a burden standpoint . . . .

> . . . .

> Yves Steger: What happens if they don't meet, let's say, one (1) point of law. Do we deny?

> Mark Officer: We judge it like we judge every case.

> . . . .

> Mike Brown: Just like any other case. There's no difference with that standard.

■ Contrary to the petitioners' assertion, the ZBA did not substitute the TCA in place of its own judgment with respect to the five variance criteria. These and other statements contained in the record reflect an accurate understanding and proper consideration of the TCA. The ZBA was correct to characterize the TCA as an "umbrella" under which a ZBA must evaluate an application to construct a telecommunications tower, as the TCA will preempt local law under certain circumstances. *See* 47 U.S.C.A. § 332(c)(7). As the First Circuit Court of Appeals has noted, although the TCA does not explicitly authorize a zoning board to consider whether a decision amounts to an effective prohibition of the provision of wireless service, "[s]ince board actions will be invalidated by a federal court if they violate the effective prohibition provision, many boards wisely do consider the point." *Second Generation Props.*, 313 F.3d at 630. Thus, the standards set forth in the TCA provide a gloss over the deliberative process, and the ZBA correctly considered its implications. It was therefore appropriate for the ZBA to contemplate whether a decision to deny Omnipoint's variance application would have the effect of prohibiting towers in violation of the TCA.

Furthermore, contrary to the petitioners' argument, statements made by board members during the course of deliberations do not demonstrate that those board members deemed certain variance criteria mooted by application of the TCA. As the trial court aptly noted,

> Although the ZBA members discussed their concern that a decision to deny a request for a telecommunications tower could constitute an effective prohibition of wireless services and thus constitute a violation of the TCA, contrary to the petitioners' claim, this concern did not result in a misapplication of the law or an abdication of the Board's authority to consider the merits of the application for a variance.

Indeed, the objectionable statements express a general concern, rather than a final determination, that the variance criteria had not been met and denial would amount to an effective prohibition. Thus, upon our review of the record, we find no basis upon which to conclude that the ZBA allowed the TCA to preempt its own findings with regard to the statutory criteria.

*III. Variance Criteria*

Londonderry's Zoning Ordinance does not allow personal wireless facilities, such as the proposed tower, in its agricultural-residential zone. *See* TOWN OF LONDONDERRY, ZONING ORDINANCE, sec. 3.9.1 (2007). Omnipoint was therefore required to obtain a use variance, as well as two area variances relating to tower height and setback requirements. *See id.,*

secs. 2.3.1.3.4, 3.9.4.1. The petitioners assert that, even absent any misapplication of the TCA, the ZBA erred in granting the variances because Omnipoint had not satisfied the five statutory variance criteria. We disagree.

■ An applicant seeking a variance must demonstrate that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the provisions of the ordinance will result in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties. *Garrison v. Town of Henniker*, 154 N.H. 26, 30 (2006).

*A. Unnecessary Hardship*

■ To prove unnecessary hardship for a use variance, the applicant must prove that: (1) a zoning restriction as applied to the property interferes with the reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Simplex Technologies v. Town of Newington*, 145 N.H. 727, 731-32 (2001).

■ In *Boccia v. City of Portsmouth*, 151 N.H. 85, 94 (2004), we stated that an applicant seeking an area variance must satisfy the following two requirements to prove unnecessary hardship: (1) an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property; and (2) the benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance.

The petitioners first argue that the trial court erred in concluding that Omnipoint had satisfied the first prongs of both *Simplex* and *Boccia*. They assert that the facts of this case parallel those found in *Garrison,* and the property should likewise be found to fall short of being "unique" for purposes of hardship. They further assert that the trial court erred by failing to consider the remaining *Simplex* prongs in its order, and argue that these factors have not been satisfied.

■ As a preliminary matter, we note that no party has argued the TCA preempts the statutory criteria here. Rather, this case requires us to reconcile our statutory variance criteria, specifically, the hardship standard, with the overarching standards set forth in the TCA. We have stated that to satisfy the uniqueness factor an applicant "must show that the hardship is a result of specific conditions of the property and not the area

in general." *Garrison*, 154 N.H. at 32 (quotations omitted). "[T]he burden cannot arise as a result of the zoning ordinance's equal burden on all property in the district." *Id.* at 32-33 (quotation omitted). It "must arise from the property and not from the individual plight of the landowner." *Id.* at 33 (quotation omitted). In *Garrison*, we upheld the superior court's decision that the property at issue was not unique for zoning purposes because the record did not demonstrate "that the proposed site was different from any other property" in the particular district. *Id.* at 33-34. We concluded that the fact the land is well-suited to a particular use given its size, topography and location did not, alone, distinguish the land from any other land in the area. *Id.* at 34.

■ Under the circumstances of this case, however, we must also consider the implication of the TCA. The TCA provides for the preemption of local land use law when the decision of the board would effectively prohibit the provision of wireless services. 47 U.S.C.A. § 332(c)(7)(B)(i)(II). The First Circuit has determined that "a town's refusal to permit a tower that is needed to fill a 'significant geographic gap' in service, where no service at all is offered in the gap, would violate the effective prohibition clause." *Second Generation Props.*, 313 F.3d at 631 (brackets omitted). The First Circuit has indicated that such a violation would occur when the application "is the only feasible plan." *Id.* at 630.

■ ■ To ensure compliance with the TCA, we believe that a broader, more inclusive view of hardship is required under these circumstances. When an application to build a wireless telecommunications tower is designed to fill a significant gap in coverage, the suitability of a specific parcel of land for that purpose should be considered for purposes of determining hardship. The fact that a proposed location is centrally located within the gap, has the correct topography, or is of an adequate size to effectively eliminate the gap in coverage, are factors that may make it unique under the umbrella of the TCA. Similarly, that there are no feasible alternatives to the proposed site may also make it unique. Thus, although a parcel of land may be similar to the surrounding properties in terms of its general characteristics, it may still be "unique" for purposes of hardship when considered in light of the TCA.

■ Consistent with this broader application of the hardship criteria, and upon our review of the record, we conclude that the trial court did not err in finding unnecessary hardship for both the use and area variances. With respect to the "uniqueness" factor, the evidence before the ZBA demonstrated the necessity of a tower, at the height ultimately approved, on the proposed parcel, in order to fill what could be considered a significant gap

in coverage. Additionally, as the trial court noted, the ZBA "considered the expert testimony presented and the opinion of its own consultant in determining that no reasonable alternatives would achieve similar wireless coverage."

In addition, the evidence before the ZBA supports its decision that there is no fair and substantial relationship between the zoning ordinance and the restriction here and that the variance would not injure the public or private rights of others. The ZBA had the benefit of its personal observations during simulated height tests, as well as photographic submissions illustrating the potential impact on the view from numerous locations. There was evidence presented that the tower and surrounding compound would not create noise or traffic. The ZBA also required screening of the compound surrounding the tower, as well as screening of the tower itself, and maintenance of the existing tree canopy.

▄ Further, we find no error in the trial court's failure to explicitly address each of the *Simplex* factors in its order. The trial court accurately set forth the hardship standard for both use and area variances, noted relevant evidence before the ZBA, and made generalized conclusions applicable to these factors. Although a specific explanation of the evidence supporting its hardship findings is preferable, given the extensive record in this case, we conclude that the trial court adequately addressed the hardship standard.

### B. Diminution of Value of Surrounding Properties

▄ The petitioners assert that the trial court erred in upholding the ZBA's finding that there would be no diminution to the value of surrounding homes. In particular, they argue that the ZBA could not have reasonably relied upon the conclusions contained in the one site specific impact study provided by Omnipoint because it was based upon the "demonstrably false claim" that the tower would not be visible from the petitioners' homes. However, the ZBA is not bound to accept the conclusions of the study or any witness. *See Vannah v. Bedford*, 111 N.H. 105, 112 (1971), *overruled on other grounds by Cook v. Town of Sanbornton*, 118 N.H. 668, 671 (1978). As ZBA Chairman Brown noted before leading the discussion on property value,

the ZBA does not have to accept the conclusions of experts on either side on the question of value or any other point since one of the functions of the Board is to decide how much weight or credibility to give that testimony or the opinions of witnesses, including expert witnesses. Keep in mind that the burden is on the

applicant to convince the ZBA that it is more likely than not that the project will not decrease values.

Here, the ZBA had substantial evidence supporting its decision regarding property values including the numerous studies submitted, the testimony of at least one appraiser, the lack of abatement requests in comparable areas, its own knowledge of the area, and personal observations made during the simulated height tests, to support its conclusion. Thus, the trial court did not err in concluding that the ZBA acted reasonably in finding Omnipoint had met its burden of proving there would be no loss of value to the surrounding properties.

### C. Remaining Criteria

Lastly, the petitioners argue that the trial court erred in ruling that the variance was consistent with the spirit of the ordinance, that it was not contrary to the public interest, and that substantial justice would be done in granting the variances. We disagree.

Based upon the record of the ZBA hearings, we conclude that sufficient evidence supports these rulings. At the hearings, Omnipoint showed that the variance would not be contrary to the spirit of the ordinance or injurious to the rights of others because the tower would not alter the essential character of the locality or threaten the public health, safety or welfare. The evidence presented included that the tower would be reduced to 146 feet, would not have a light on its top, and would be screened from view on the ground with vegetative buffer and disguised at the top as a pine tree. The tower would be located at a point furthest from abutting properties on Hazelnut Drive, and would not generate noise, traffic or odors. A tower at this site would also serve the public interest in that it would alleviate a significant gap in coverage and would be used to provide service for at least two other wireless telecommunications companies to limit the need for any further towers. In addition, Omnipoint showed that substantial justice would be done in granting the variances because it was the only reasonable way to remedy an existing gap in coverage.

Accordingly, the trial court did not err in concluding that the ZBA acted lawfully and reasonably in finding that Omnipoint met its burden of proving the required variance criteria.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.