# United States Court of Appeals
## For the First Circuit

No. 10-1738

INDUSTRIAL COMMUNICATIONS AND ELECTRONICS, INC.;
RCC ATLANTIC INC., d/b/a Unicel; U.S.C.O.C. OF NEW HAMPSHIRE RSA
#2, INC., d/b/a U.S. Cellular,

Plaintiffs, Appellees,

v.

TOWN OF ALTON, NEW HAMPSHIRE,

Defendant, Appellee.
_____

DAVID SLADE; MARILYN SLADE,

Intervenors, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before
Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Boudin, Circuit Judge.

Paul T. Fitzgerald with whom Wescott, Dyer, Fitzgerald &
Nichols, P.A. was on brief for intervenors, appellants.
Steven E. Grill with whom Devine, Millimet & Branch, P.A.
was on brief for appellees.

May 19, 2011

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>.** David and Marilyn Slade own property in the Town of Alton, New Hampshire ("Alton" or "the Town"). Industrial Communications and Electronics, Inc. ("Industrial Communications"), aims to construct a cell phone tower in Alton for two wireless companies. Claiming that only one site was suitable, Industrial Communications filed an application in September 2005 to construct the tower at 486 East Side Drive in Alton.

The site is "200 feet or less" from the border of Slades' property and according to the Slades, the tower would "stand[] prominently in the line of sight of the panoramic view . . . of Lake Winnipesaukee and the surrounding mountains" that the Slades currently enjoy from their property. The Slades consider the property's "stunning views" to be its "most recognizable asset," and they colorably assert that the construction will cause them economic as well as aesthetic harm by diminishing the property's value.

The Town's zoning ordinance limits cell phone towers to ten feet above the average tree canopy in a particular area; according to calculations by the Town's forester, Industrial Communications' tower would thus be limited to seventy-one feet above ground level. Because Industrial Communications determined that the tower needed to be 120 feet above ground level to be

effective, it applied to the Town's Zoning Board of Adjustment ("Board") for a variance to construct the tower.

Numerous hearings were held before the Board in which the Slades participated. Ultimately, the Board denied the variance, finding in its final written decision that Industrial Communications failed to meet the criteria for a variance under New Hampshire law. So far as it appears, Industrial Communications made no attempt to overturn the Board's decision in state court as "illegal or unreasonable." N.H. Rev. Stat. Ann. § 677:4 (2008).

Instead, Industrial Communications and the two wireless providers then filed a lawsuit in the federal district court for New Hampshire against the Town, under section 704(a) of the Telecommunications Act of 1996 ("the Act"). 47 U.S.C. § 332(c)(7). This statute, resting on the Commerce Clause power, Cellular Phone Taskforce v. FCC, 205 F.3d 82, 96 (2d Cir. 2000), cert. denied 531 U.S. 1070 (2001), allows--in defined circumstances--an aggrieved person or entity to bring a suit to override state or local law in order to construct cell phone towers, 47 U.S.C. § 332(c)(7)(B)(v).

State and local restrictions on construction of such facilities are common, see H.R. Rep. No. 104-204, at 94 (1995), reprinted in 1996 U.S.C.C.A.N. 10, 61, height being a common and (to both sides) important constraint on towers needed for cell phone service. Despite federalism concerns, Congress found that in the interests of the national telecommunications network, some

restrictions had to give way.  Town of Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 13 & n.3 (1st Cir. 1999); H.R. Rep. No. 104-458, at 207-08 (1996) (Conf. Rep.), reprinted in 1996 U.S.C.C.A.N. 124, 222.  Section 704(a) permits courts to enter judgments overriding state or local restrictions, but only if the court finds that the state or local action or refusal to act violates one of the Act's grounds for relief.

Industrial Communications invoked two of the stated grounds.  The more pertinent of the two requires a showing that the denial of the variance would effectively "prohibit[] the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II).[1] Industrial Communications and the carriers set forth extensive evidence as to their efforts to secure other sites and reasons why these efforts were fruitless.  The claim was at least a colorable one, but as the case proceeded, it has not been resolved on the merits.

When the federal action was brought, the Town initially defended the case.  The Slades intervened with the permission of the court and then stood silent as the Town handled the defense. The Town then began to negotiate a settlement with Industrial

_____

[1]The other statutory ground asserted was that the Board's decision was not "supported by substantial evidence," 47 U.S.C. § 332(c)(7)(B)(iii), but Industrial Communications' claim on this ground--that the Board's decision "essentially ignore[d] all of the scientific and expert evidence" regarding the necessity of a 120-foot pole to close coverage gaps--substantively overlapped with their effective prohibition of service claim.

Communications and its co-plaintiffs, which the Slades opposed.  On March 5, 2010, the wireless providers and the Town filed an "Agreement for Entry of Consent Decree."

The agreement proposed that a decree be entered to settle the case, to vacate the Board's decision denying a variance and to permit a one-hundred-foot tower--without further meetings, hearings or decisions of the Board.  Thereafter, the district court concluded that the Slades did not raise any claims a federal court was empowered to address and, refusing to consider the Slades' challenge to the Town's authority to act for the Board, entered as a judgment (with a minor modification) the consent decree proposed by the plaintiffs.

The Slades now appeal and the issues before us are legal ones reviewed de novo.  O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010).  At the outset, the parties debate whether the Slades have standing to pursue this case and whether they are entitled to make claims on their own behalf under the Act.  The answer to the latter issue is no: the Act empowers those "adversely affected" by state or local action "inconsistent with" 47 U.S.C. § 332(c)(7)(B) the right to sue to overturn it, id. § 332(c)(7)(B)(v); the only actions "inconsistent" with that subparagraph are denials of requests to construct wireless facilities, see id.

§ 332(c)(7)(B)(i)-(iv), so the Slades--offended by the grant--have no claim of their own under the Act.[2]

Whether the Slades can prevent the Town from abandoning its defense and seeking to settle is a different question to which the answer is also ordinarily "no."  Usually, a government entity is free as a defendant to decline to defend or to settle on the best terms it can get.  Negron Gaztambide v. Hernandez Torres, 145 F.3d 410, 416 n.7 (1st Cir. 1998) (per curiam), cert. denied 525 U.S. 1149 (1999).  But this does not resolve the yet further question whether the Slades can carry on as defendants in the lawsuit in the absence of the Town, and here the matter is not susceptible to one-sentence answers.

As a majority of circuits have held, often "an intervenor can continue to litigate after dismissal of the party who originated the action," Benavidez v. Eu, 34 F.3d 825, 830 (9th Cir. 1994) (quoting U.S. Steel Corp. v. EPA, 614 F.2d 843, 845 (3d Cir. 1979) and citing sources), but the intervenor's ability to do so is "contingent upon a showing by the intervenor that he fulfills the requirements of Art. III," Diamond v. Charles, 476 U.S. 54, 68

---

[2]See Drago v. Garment, 691 F. Supp. 2d 490, 494 (S.D.N.Y. 2010) ("There is no language in [section 332(c)(7)(B)] to allow someone to bring an action in federal court for adverse affects [sic] flowing from the granting of a request to construct personal wireless service facilities."); see also Jaeger v. Cellco P'ship, No. 3:09CV567, 2010 WL 965730, at *8 (D. Conn. Mar. 16, 2010) (Telecommunications Act claim dismissed because it concerned "the granting of [another's] application and not the denial of [the plaintiff's] proposal").

(1986); see also United States v. AVX Corp., 962 F.2d 108, 112-13 (1st Cir. 1992).

To have Article III standing to act as independent litigants, the Slades must have suffered an "injury in fact" that is causally connected to the complained-of conduct and that will likely be redressed by a favorable federal court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, the Slades colorably claim protectable economic and other interests that will be directly impaired by the construction of a tower; and, if they prevail here, the plaintiffs will still lack authority to build the tower. Cf. R.I. Comm. on Energy v. Gen. Servs. Admin., 561 F.2d 397, 401 (1st Cir. 1977).

Yet, as usual, there is a countervailing set of precedents that affirm the right of a litigant, including a defendant, to settle a case on terms agreeable to the plaintiff and the defendant despite the objections of third parties.

> It has never been supposed that one party . . . could preclude other parties from settling their own disputes . . . . [An intervenor] does not have power to block [a consent decree] merely by withholding its consent.

Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 528-29 (1986). However, "merely" does not mean "never," but rather points to the need for something more.

Here, there is "something more." The Slades have a legal interest under state law in the protection that the zoning laws

afford to their property: specifically, they could sue in state court to overturn the variance if it were granted unlawfully. N.H. Rev. Stat. Ann. § 677:4; Daniels v. Town of Londonderry, 953 A.2d 406, 409 (N.H. 2008). The Board held the variance unlawful under state law, and Industrial Communications did not seek review of that ruling.

Accordingly, what is at issue here is not merely a private settlement between parties (say, a release in exchange for money) but, by virtue of the court's adoption and entry of a consent decree, a legally operative judgment that overrides state law and the Slades' rights under state law that would prevail unless overridden by the decree. Given that Article III requisites are established, the Slades are entitled to resist the entry of a decree that terminates their protectable rights unless a violation of the Act is proven.

Industrial Communications says that denial of the variance does violate the Act, and as noted, the complaint sets out arguments to that end and points to evidence that refusal of the variance would "prohibit[] the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). But the district court has not yet so found; rather, it deemed itself no longer entitled to decide that question because the original defendant no longer chooses to defend the variance. But the Slades are prepared

to do so; they are parties to the case; and they have independent interests to protect that are threatened by the decree.

The situation could be quite different if the Slades' legal rights under state law were unaffected by the decree. But the consent decree, if entered as a judgment by the federal court, eliminates those rights. See Brehmer v. Planning Bd. of Wellfleet, 238 F.3d 117, 121-22 (1st Cir. 2001). If the decree is not valid, the most appropriate time and place to raise that issue is now and in the court that is considering the decree. Cf. Metheny v. Becker, 352 F.3d 458, 462 (1st Cir. 2003).[3]

This is enough to resolve the present appeal. We are not required, nor is there any reason to attempt, to reconcile the cases that arise in countless different contexts, which juxtapose the right of parties to exit from litigation and the right of others to carry on. Compare Diamond, 476 U.S. at 64-67, with Bryant v. Yellen, 447 U.S. 352, 366-68 (1980). The Act creates a complicated and relatively unusual scheme of its own; the job of the courts is to make it work effectively consistent with its language and aims; and that is what we have sought to do.

This does not mean that the Slades can force the Town to defend the case or prevent it from switching sides. There may even

_____

[3] Although it is not part of the record or necessary to the result, we note for completeness' sake that the Slades began a protective action in state court and have been met, as one might expect, with a claim by Industrial Communications that their case is an improper collateral attack on the decree.

-9-

be means under state law for the Town to override the Board's denial of a variance; the plaintiffs so claimed below but not on appeal. Yet such an attempted override would itself presumptively be subject to attack under state law by aggrieved persons, and being unshielded by a federal decree under the federal statute, the grant would be fully open to such an attack under state law.

Nothing we have said is intended to suggest that a district court, faced with a proposed consent decree and no opposition from anyone, is obliged to conduct hearings and make supported findings. It is one thing to resolve a case by agreement of all parties; it is another when a party to the case is protesting and the court's authority to wipe out the rights of the protesting party depends on findings that the court has not made. Industrial Communications claims be entitled to relief under the Act: all it now needs to do is to prove it.

The Slades also challenge under state law the authority of the Town to settle the case on behalf of the Board. It is not clear to us why this state law issue needs to be resolved: the Town--named as the defendant--is not obliged to defend the suit and the Slades are free to carry on the suit and protect their interests directly. So far as we can tell, the lack of authority claim matters only if the Slades are impotent to protect their own interests, and we hold that they can protect them.

The judgment of the district court is <u>vacated</u> and the matter is <u>remanded</u> for further proceedings consistent with this decision.  Each side is to be bear its own costs on this appeal.

<u>It is so ordered</u>.