# United States Court of Appeals
## For the First Circuit

No. 25-1275

JOHN T. KOLACKOVSKY; ZENAS B. SEPPALA; ANNE HYDE; ROBERT SONIA;
JONATHAN RING; TIM ROSE; RAY THURSBY; DEE OLIBERIO; CALANDRA
SALO; LARY SALO; CASSI HOHENWARTER,

Plaintiffs, Appellants,

v.

TOWN OF ROCKPORT,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Myong J. Joun, U.S. District Judge]

Before

Montecalvo, Rikelman, and Dunlap,
Circuit Judges.

Michael C. Walsh and Walsh & Walsh LLP on brief for
appellants.

Deborah I. Ecker, Amy E. Kwesell and KP Law, P.C. on brief
for appellee.

January 22, 2026

**DUNLAP**, <u>Circuit Judge</u>.  Eleven residents of the Town of Rockport, Massachusetts (the "Town"), brought various state statutory and federal constitutional challenges to the creation of a new zoning district in the Town.  The district court dismissed the residents' claims for lack of subject-matter jurisdiction -- specifically, lack of standing.  Because we agree that the residents have not alleged the necessary prerequisites to establish standing, we affirm the district court's order.

**I.**

As alleged in the Complaint, Plaintiffs-Appellants are residents, registered voters, and taxpayers in the Town of Rockport.  Of these, a subset reside on property abutting the Rockport commuter train station or reside on property within the overlay district that is the subject of this dispute. Defendant-Appellee Town of Rockport is an incorporated municipality in Massachusetts.

Massachusetts law requires the Town to have a zoning ordinance or by-law that provides for an of-right, high-density, multi-family housing district located within a half mile of a mass transit station.  <u>See</u> Mass. Gen. Laws ch. 40A, §§ 1A, 3A (2023). Under Massachusetts law, when a "zoning ordinance or by-law or amendment thereto" is being adopted at a town meeting, it usually must be adopted by a two-thirds vote; certain amendments to a

zoning by-law to allow multi-family housing, however, may be adopted by a simple majority vote of a town meeting. Id. § 5.

The Town's adoption of two overlay districts pursuant to these provisions lies at the heart of the present dispute. In May 2022, in order to comply with state law, the Town voted by a simple majority of a town meeting to add a "Transit Oriented Village Overlay District" (TOVOD) to its zoning by-law. At least one of the Plaintiffs attended the May 2022 town meeting and voted against the TOVOD. More than a third, but less than half, of the votes cast on the motion opposed the TOVOD. Subsequently, perhaps because the TOVOD did not sufficiently comply with the requirements of state law, the Town's planning board proposed a second overlay district that would encompass the TOVOD and two other districts. This overlay district would be called the Massachusetts Bay Transportation Authority (MBTA) Communities Multi-Family Overlay District (MCMOD). It appears -- although it is not alleged in the Complaint -- that on April 29, 2024, the Town voted by a simple majority of a town meeting to add the MCMOD to its zoning by-law.

The day before the vote on the MCMOD, on April 28, 2024, Plaintiffs filed their Complaint in federal district court against the Town. Plaintiffs sought a declaration that the proposed MCMOD would be subject to a two-thirds vote requirement at a town meeting and that the MCMOD failed to meet state statutory and federal constitutional requirements. They asserted that the proposed

MCMOD "affect[ed] sharply" the property values of the Plaintiffs who reside within the proposed MCMOD and "undermine[d] dramatically the expectation of the property owners in their parcel" by loosening zoning restrictions that required single-family housing and more greenspace. The Town filed a motion to dismiss, to which Plaintiffs responded. In Plaintiffs' response, they asserted for the first time that several of the Plaintiffs attended the April 2024 town meeting and voted against the MCMOD. Plaintiffs also asserted that more than a third, but less than half, of the votes cast on the motion opposed the MCMOD.

The district court granted the Town's motion to dismiss because Plaintiffs lacked standing, and thus, the court lacked subject-matter jurisdiction. The court reasoned that Plaintiffs failed to provide specific information as to the harm that has befallen each Plaintiff, and that Plaintiffs could not claim legislative standing because they had not been singled out for specially unfavorable treatment and because their votes had not been completely nullified. Plaintiffs timely appealed.

## II.

Plaintiffs argue on appeal that the district court erred in holding that it lacked subject-matter jurisdiction to hear their claims. Because we agree with the district court that Plaintiffs failed to adequately allege standing, our analysis starts and ends

there.  We need not, and do not, reach the merits of Plaintiffs' claims.

## A.    Standard of Review

We review a district court order granting "a motion to dismiss for both lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6)" de novo.  Lyman v. Baker, 954 F.3d 351, 359 (1st Cir. 2020).  Although the inquiries are "conceptually distinct," the "same basic principles apply" to our review of a dismissal under either subpart.  Id. (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016)).  First, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id. at 360 (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).  Next, we "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Id. (quoting Schatz, 669 F.3d at 55).  Further, at the pleading stage, the plaintiffs carry the burden of establishing sufficient facts to plausibly demonstrate standing.  See Hochendoner, 823 F.3d at 731.  "Neither conclusory assertions nor unfounded speculation can supply the necessary heft."  Id.  Finally, we are not bound to rely on the

district court's reasoning but may affirm dismissal "on any basis that is apparent from the record." Id. at 730.

## B.   Article III Standing

"Standing doctrine assures respect for the Constitution's limitation of '[t]he judicial Power' to 'Cases' and 'Controversies.'" Lyman, 954 F.3d at 360 (alteration in original) (quoting Hochendoner, 823 F.3d at 731); see U.S. Const. art. III, § 2, cl. 1.  Accordingly, we must look to "whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Lyman, 954 F.3d at 360 (quoting Massachusetts v. HHS, 923 F.3d 209, 221 (1st. Cir. 2019)).  To establish the stake necessary for constitutional standing, Plaintiffs must demonstrate "(i) that [they] ha[ve] suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." FDA v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024).  Even plaintiffs seeking only declaratory judgment must meet this standard.  28 U.S.C. § 2201; See Penobscot Nation v. Frey, 3 F.4th 484, 508 (1st Cir. 2021).

"An injury-in-fact is the invasion of a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.'" Lyman, 954 F.3d at 360 (quoting Lujan v. Defs.

of Wildlife, 504 U.S. 555, 560 (1992)).  An injury is concrete rather than abstract if it "actually exist[s]."  Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016)).  Such injury can include a "physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights."  All. for Hippocratic Med., 602 U.S. at 381.  Threat of future injury may suffice "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."  Roe v. Healey, 78 F.4th 11, 20 (1st Cir. 2023) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).  But there is no standing where an injury is "too speculative for Article III purposes."  Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Blum v. Holder, 744 F.3d 790, 799 (1st Cir. 2014)).  "'[A]llegations of possible future injury' are not sufficient."  Nat'l Ass'n of Gov't Emps., Inc. v. Yellen, 120 F.4th 904, 910 (1st Cir. 2024) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

A "particularized" injury must be more than a "generalized grievance," and must "manifestly 'affect the plaintiff in a personal and individual way.'"  Lyman, 954 F.3d at 360-61 (first quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344, 348 (2006); and then quoting Lujan, 504 U.S. at 560 n.1).  "Injuries that are too 'widely shared' or are 'comparable to the common concern for obedience to law' may fall into the category of

generalized grievances about the conduct of government." Id. at 361 (quoting Becker v. Fed. Election Comm'n, 230 F.3d 381, 390 (1st Cir. 2000)). The court must be able to determine from the face of the complaint "whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." Hochendoner, 823 F.3d at 733 (quoting Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)).

Plaintiffs have not demonstrated a "'concrete and particularized' and 'actual or imminent'" injury. Lyman, 954 F.3d at 360 (quoting Lujan, 504 U.S. at 560). The Complaint is remarkably vague: as the district court noted, the Complaint lists each Plaintiff's name, place of residence, voter status, and sometimes whether a specific Plaintiff is an abutter to or resident of the overlay district(s). But "no specific information is provided regarding the harm, if any, that has befallen each individual plaintiff." Hochendoner, 823 F.3d at 732. Instead, Plaintiffs include broad and vague injury allegations -- that the then-proposed MCMOD "affect[ed] sharply" their property values and "undermin[ed] dramatically the expectation of the property owners."

These allegations are so perfunctory and conclusory that we can make nothing of them. True, monetary or property-related injury counts as concrete injury, All. for Hippocratic Med., 602 U.S. at 381, but Plaintiffs provide no details on the changes in

- 8 -

property values or other injury to each Plaintiff's property. Are the alleged "sharp effects" decreases in value, which could show injury, or increases in value, which would not -- or both? We are left to guess. No further guidance is provided by the allegation that "the expectation of the property owners in their parcel" will be "undermine[d] dramatically." What exactly were the expectations of each property owner? Plaintiffs' allegations have left us with no way to ascertain each individual Plaintiff's specific grievances.

Plaintiffs' conclusory assertions in their brief on appeal that their property values will diminish, traffic in the area will increase, and potential construction of tall residential buildings will restrict their access to light and air do not remedy the problem. Assertions of harm set forth in briefs cannot fill the void left by the lack of adequate allegations in the complaint. See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev., 421 F.3d 1, 7 n.2 (1st Cir. 2005) (noting that "additional allegations" in plaintiffs' opposition to the motions to dismiss were "not properly before us"); see also Calvary Chapel of Bangor v. Mills, 542 F. Supp. 3d 24, 37 (D. Me. 2021) ("[A] party cannot amend its Complaint by assertions made in briefs."), aff'd on other grounds, 52 F.4th 40 (1st Cir. 2022).

Often, "the standing question can be answered chiefly by comparing the allegations of the particular complaint to those

made in prior standing cases." All. for Hippocratic Med., 602 U.S. at 384 (quoting Allen v. Wright, 468 U.S. 737, 751-52 (1984), abrogated in part by, Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)). Although the Supreme Court has addressed a "controversy" where "the precise impact of [an] ordinance . . . on a given piece of property was not known," Vill. of Belle Terre v. Boraas, 416 U.S. 1, 9 (1974) (discussing Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365, 397 (1926)), the complaint in that seminal zoning case was considerably more specific than the present complaint. Notably, the complaint expressly estimated approximate market values for each of the relevant sections of the property at issue before and after zoning restrictions were adopted. See Vill. of Euclid, 272 U.S. at 384. There are no similarly particularized allegations presented here.[1]

We conclude that Plaintiffs have failed to adequately demonstrate that they have been or likely will be injured in fact. See Hochendoner, 823 F.3d at 731-34.

---

[1] While we have found standing where property owners alleged that a zoning decision would diminish their property's economic and aesthetic value, that case contained allegations regarding the specific effects of the zoning decision on the plaintiffs' use and enjoyment of their property. Indus. Commc'ns & Elecs., Inc. v. Town of Alton, 646 F.3d 76, 77, 79-81 (1st Cir. 2011) (noting allegations that the proposed tower would interrupt "the line of sight of the panoramic view . . . of Lake Winnipesaukee and the surrounding mountains" from the intervenors' property (alteration in original)).

## C.  Abutter Standing

Plaintiffs' failure is not remedied by their effort to establish standing on the basis that seven of the named Plaintiffs are "abutters" to the railroad station or live in the overlay district.  Massachusetts law gives "abutters" standing to challenge decisions of the zoning "board of appeals or any special permit granting authority."  Mass. Gen. Laws ch. 40A, §§ 11, 14, 17 (2024); see Stone v. Zoning Bd. of Appeals of Northborough, 263 N.E.3d 818, 827–28 (Mass. 2025).  But this state statute does not suffice to establish standing.

State law is generally irrelevant for purposes of assessing standing in federal court as to federal claims.  "[S]tanding in federal court is a question of federal law, not state law."  Hollingsworth v. Perry, 570 U.S. 693, 715 (2013); see 13B Wright & Miller's Federal Practice & Procedure § 3531.14 (3d ed. 2025) ("When suit is brought in a federal court to enforce a claim of federal right, whether statutory or constitutional, the question of standing ordinarily is treated as a federal question.").  Accordingly, to the extent Plaintiffs rely on state law to establish standing for purposes of their federal-law claims, we conclude that the scope of any legislative grant of standing to abutters by the Commonwealth of Massachusetts does not affect our analysis.

Nor does the state statute suffice to establish standing for Plaintiffs' state-law claims. Some circuits have applied state standing law when considering state-law claims pursuant to diversity and supplemental jurisdiction. See, e.g., Atlas Biologicals, Inc. v. Kutrubes, 50 F.4th 1307, 1325-26 (10th Cir. 2022). While our circuit has not yet squarely faced this question, we need not address it now for two reasons. First, state law cannot overcome Plaintiffs' failure to adequately plead the essential elements of Article III standing in this case. See id. at 1326; Protect Our Parks, Inc. v. Chi. Park Dist., 971 F.3d 722, 730-32 (7th Cir. 2020); 13B Wright & Miller's Federal Practice & Procedure § 3531.14 ("Of course state rules that recognize standing need not be honored if Article III requirements are not met, although Article III concepts should be sufficiently flexible to recognize state-created rights to proceed in the public interest."). Here, as noted, Plaintiffs have failed to satisfy the basic requirements of Article III standing. They cannot use state law to backfill this failure. Second, even if state law could in some way help Plaintiffs satisfy Article III standing, the Massachusetts statute does not apply on its face. Plaintiffs do not take issue with any decisions of a zoning board of appeals nor the grant or denial of any special permits or variances -- the only actions to which the state law applies. See Mass. Gen. Laws ch. 40A, §§ 11, 14, 17 (2024). Rather, Plaintiffs challenge a

town meeting vote to establish an overlay district. A theory of "abutter standing" under state law thus does not help Plaintiffs even as to their state-law claims.

## D. Legislator Standing

Plaintiffs forward one final theory of standing -- legislator standing -- in an effort to save at least their first claim, which relates to the vote threshold applied at the town meeting.[2] On its face, Plaintiffs' argument that some of them have legislator standing to challenge the town meeting vote threshold for the MCMOD might be plausible. If their interpretation of the zoning by-law is correct, then their votes may have been enough to defeat the overlay, and thus, they arguably should be able to contest the vote threshold. Cf. Coleman v. Miller, 307 U.S. 433, 438 (1939). Plaintiffs' effort to invoke legislator standing is nevertheless unavailing.

As an initial matter, we note that the availability of legislator standing in the context of this case is contested. The Town argues that we should find that Plaintiffs lack standing in part because Massachusetts has never granted standing based on a legislator standing theory. While limiting standing to pursue state-law claims via application of state standing principles

---

[2] We do not see how legislator standing would be relevant to any of the other counts raised by Plaintiffs, none of which relate to Plaintiffs' purported actions as legislators.

would be consistent with Atlas Biologicals (unlike using state law to avoid Article III standing requirements based on a plaintiff's status as an abutter), we again do not need to wade into that particular thicket. Because Plaintiffs' legislator standing argument is based on facts outside the pleadings and relates to a supplemental claim that the district court had discretion to dismiss when all Plaintiffs' federal claims had been dismissed, it cannot save Plaintiff's vote-threshold claim.

First, Plaintiffs did not include the facts that support their legislator standing argument in their Complaint. Plaintiffs initially made the legislator-standing argument in their response to the Town's motion to dismiss. And Plaintiffs supported that argument in their memorandum with allegations of events that happened at the town meeting on April 29, 2024 -- the day after they filed their Complaint. Those events, however, were never alleged in any amended or supplemental pleading.[3] When reviewing a judgment on a motion to dismiss, we "do not consider evidence beyond" the "well-pleaded facts in the plaintiff's complaint." Stanley v. City of Sanford, 606 U.S. 46, 49 (2025). Again, facts

---

[3] Plaintiffs have not offered any reason why they could not have amended their Complaint as a matter of course, sought the district court's leave to amend their Complaint, or submitted a supplemental pleading to set out the facts of the April 2024 town meeting. See Fed. R. Civ. P. 15(a), (d); Douglas v. Hirshon, 63 F.4th 49, 58 (1st Cir. 2023).

asserted only in briefing do not suffice. See Redondo-Borges, 421 F.3d at 7 n.2.

Second, even if we somehow drew an inference from the Complaint that some of the Plaintiffs did in fact attend and vote at the April 2024 town meeting, the district court still did not err in dismissing the vote-threshold claim. The district court had already dismissed all other claims for lack of standing, leaving one supplemental, state-law claim in federal court. Congress has given federal district courts supplemental jurisdiction over state-law claims that are "part of the same case or controversy" as federal questions in actions before them. 28 U.S.C. § 1367(a). But "district courts may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). Thus, "[w]hen federal claims are dismissed before trial, state claims are normally dismissed as well." McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 74 (1st Cir. 2003); see Rice v. President & Fellows of Harv. Coll., 663 F.2d 336, 339 (1st Cir. 1981) (stating that the district court should not have assessed standing under state law on pendant state claim but should have simply dismissed the state claim because "the federal claims [were] dismissed before trial" (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966))). We are not bound to the district court's reasoning but may affirm dismissal "on any basis

- 15 -

that is apparent from the record," Hochendoner, 823 F.3d at 730, and we conclude that it would have been appropriate to dismiss Plaintiffs' first claim on this basis as well.

### III.

Accordingly, the district court's judgment is **affirmed**.