Merrimack
No. 2003-687

JOHN R. HARRINGTON & a.

v.

TOWN OF WARNER

Argued: December 9, 2004
Opinion Issued: April 4, 2005

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Margaret H. Nelson* on the brief and orally), for the petitioners.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Donald E. Gartrell* on the brief and orally), for the respondent.

DUGGAN, J. Peter Wyman obtained a variance from the Town of Warner Zoning Board of Adjustment (ZBA) to expand his current manufactured housing park, Pleasant Lake Estates, to include twenty-five additional sites. The abutting landowners, petitioners John R. and Fernanda Harrington (abutters), appeal from an order of the Superior Court (*Smukler*, J.) affirming the ZBA's decision. We affirm.

The following facts were found by the trial court or are evident from the record. Pleasant Lake Estates is located on a forty-six-acre parcel of land in Warner that is zoned as a medium density residential district (R-2). The park currently utilizes twenty-six acres of the property and consists of thirty-three manufactured homes and fifty-four campground sites. Wyman sought to expand Pleasant Lake Estates by adding twenty-six additional manufactured homes on the remaining twenty acres of the property. Article XIII, section E of Warner's zoning ordinance pertains to manufactured housing parks and provides:

> Where Allowed: Manufactured housing parks shall be allowed in all but the commercial district (C1) and Business district (B1) and consist of a minimum of 10 acres and at least two (2) sites. The maximum number of sites shall not exceed 25. Housing sites shall not include wetlands, water bodies, roads, severe slopes or open space on individual sites.

WARNER, N.H., ZONING ORDINANCE art. XIII, § E(1) (2002). Wyman sought a variance for the expansion because the respondent Town of Warner (Town) was uncertain whether his proposal was permitted under the zoning ordinance.

Following two public meetings and a site walk, the ZBA voted to grant the variance but limited the expansion to twenty-five additional sites to be added at the rate of five lots per year. The abutters appealed the ZBA's decision. Following a hearing, the trial court ruled that the ZBA acted reasonably and lawfully in concluding that Wyman met his burden of establishing the criteria necessary for a variance. This appeal followed.

*I. Variance Criteria*

The abutters argue that the trial court erred in affirming the ZBA's decision to grant the variance because Wyman failed to satisfy the criteria for a variance. Specifically, the abutters argue that Wyman: (1) failed to show unnecessary hardship; (2) created any financial hardship he suffered because the zoning restrictions preceded his purchase of the property; (3) failed to show that the variance was consistent with the spirit of the ordinance; (4) failed to show that the variance did not derogate from the intent or purpose of the ordinance; and (5) failed to show that substantial justice would be done in granting the variance.

Our review in zoning cases is limited. *Hill v. Town of Chester*, 146 N.H. 291, 292 (2001). The factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable. *Duffy v. City of Dover*, 149 N.H. 178, 180 (2003). The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court. *Id.* We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous. *Id.*

Our cases interpreting RSA 674:33, I(b) (1996) have long recognized a five-part test for the granting of variances. *See, e.g., Ryan v. City of Manchester Zoning Board*, 123 N.H. 170, 173 (1983). To obtain a variance, a landowner bears the burden of showing that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties. *Shopland v. Town of Enfield*, 151 N.H. 219, 222 (2004); *see* RSA 674:33, I(b).

*A. Unnecessary hardship*

We first address the abutters' argument that the trial court erred in ruling that the ZBA acted lawfully and reasonably in finding that Wyman met his burden of showing unnecessary hardship. Our recent decisions have attempted to clarify the unnecessary hardship standard.

In *Boccia v. City of Portsmouth*, 151 N.H. 85, 91-92 (2004), we distinguished between use and area variances when determining whether

an applicant established unnecessary hardship. We held that, when an applicant seeks an area variance, the following factors should be considered in the hardship calculation: (1) whether an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property; and (2) whether the benefit sought by the applicant can be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance. *Id.* at 92.

When, however, an applicant seeks a use variance, the standard set forth in *Simplex Technologies v. Town of Newington*, 145 N.H. 727, 728 (2001), applies. *See Boccia*, 151 N.H. at 92. In *Simplex*, the applicant sought a use variance to operate commercial businesses in an industrial zone. *Simplex Technologies*, 145 N.H. at 728. To establish unnecessary hardship for a use variance, an applicant must show that: (1) the zoning restriction as applied interferes with the applicant's reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Id.* at 731-32. Thus, as a threshold matter, we must determine whether the variance sought by Wyman was an area or use variance. *See Boccia*, 151 N.H. at 91-92.

A use variance allows the landowner to engage in a use of the land that the zoning ordinance prohibits. *Id.* at 90. Use variances pose a greater threat to the integrity of a zoning scheme because the fundamental premise of zoning laws is the segregation of land according to uses. *Bacon v. Town of Enfield*, 150 N.H. 468, 477 (2004) (Duggan and Dalianis, JJ., concurring specially).

An area variance is generally made necessary by the physical characteristics of the lot. *Boccia*, 151 N.H. at 90. In contrast to a use variance, an area variance involves a use permitted by the zoning ordinance but grants the landowner an exception from strict compliance with physical standards such as setbacks, frontage requirements, height limitations and lot size restrictions. *Id.* As such, an area variance does not alter the character of the surrounding area as much as a use not permitted by the ordinance. *Bacon*, 150 N.H. at 477 (Duggan and Dalianis, JJ., concurring specially).

The critical distinction between area and use variances is whether the purpose of the particular zoning restriction is to preserve the character

of the surrounding area and is thus a use restriction. *See* 3 A. H. RATHKOPF & D. A. RATHKOPF, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 58:4, at 58-17 (2004). If the purpose of the restriction is to place incidental physical limitations on an otherwise permitted use, it is an area restriction. *See Boccia*, 151 N.H. at 90. Whether the variance sought is an area or use variance requires a case-by-case determination based upon the language and purpose of the particular zoning restriction at issue. Accordingly, to resolve this question, we must interpret the Town's zoning ordinance to determine the purpose of the zoning restriction.

The interpretation of a zoning ordinance is a question of law, which we review *de novo. Duffy*, 149 N.H. at 181. Because the traditional rules of statutory construction generally govern our review, the words and phrases of an ordinance should be construed according to the common and approved usage of the language. *Id.* When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.* Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include. *Id.*

As set forth above, article XIII, section E of the Town's zoning ordinance provides that manufactured housing parks "shall be allowed in all but the commercial district (C1) and Business district (B1) and consist of a minimum of 10 acres and at least two (2) sites. The maximum number of sites shall not exceed 25." WARNER, N.H., ZONING ORDINANCE art. XIII, § E(1).

The plain language of the ordinance appears to fix the maximum number of manufactured housing sites in a park at twenty-five for any parcel of land ten acres in size or larger. This interpretation is supported by another section of the zoning ordinance, which regulates manufactured housing subdivisions with essentially identical language. *See* WARNER, N.H., ZONING ORDINANCE art. XIII, § F. Under that section, a subdivision must consist of a minimum of twelve acres, and "[t]he maximum number of lots in *any* manufactured housing subdivision shall not exceed 25." *Id.* at § F(0), (2) (emphasis added). By the express terms of this ordinance, the size of a manufactured housing subdivision is limited to twenty-five, regardless of the underlying acreage.

 Considering the language of these similar provisions, we hold that the ordinance is unambiguous. *See Duffy*, 149 N.H. at 181. Similar to the subdivision provision, the manufactured housing park provision expressly limits the number of sites allowed to twenty-five. This limitation applies

regardless of the number of acres within the park. Thus, unlike an area restriction, the limitation on the number of manufactured housing sites is not related to the acreage or other physical attributes of the property. Rather, the restriction limits the intensity of the use in order to preserve the character of the area.

■ Moreover, Warner's overall zoning scheme segregates land by intensity of use. WARNER, N.H., ZONING ORDINANCE art. II. For instance, there are three residential districts: village, medium density and low density. *Id.* Within these districts, a two-family dwelling is a permitted use in the village and medium density residential districts. *Id.* tbl. 1. A two-family dwelling, however, is only allowed in the low density district by special exception. *Id.* The zoning ordinance is more restrictive with regard to two-family dwellings in the low density district, thereby preserving the character of the neighborhood by restricting a more intensive use of land. Thus, the overall zoning scheme reveals an intent to segregate land by both the types of uses and the intensity of the use. Accordingly, given the language and purpose of the zoning ordinance, we conclude that the provision limiting the number of sites to twenty-five is a use restriction.

Having concluded that the variance at issue is a use variance, we now turn to the appropriate standard for unnecessary hardship. Generally, a use variance requires a greater showing of hardship than an area variance because of the potential impact on the overall zoning scheme. *Bacon*, 150 N.H. at 477 (Duggan and Dalianis, JJ., concurring). Accordingly, when the unnecessary hardship prong of the variance test is applied to use variances, we apply the three-prong standard set forth in *Simplex. See Boccia*, 151 N.H. at 94. As our cases since *Simplex* have emphasized, the first prong of the *Simplex* standard is the critical inquiry for determining whether unnecessary hardship has been established. *See, e.g., Rancourt v. City of Manchester*, 149 N.H. 51, 53-54 (2003). A number of nondispositive factors are encompassed within this prong. *See, e.g., Hill*, 146 N.H. at 293.

■ First, *Simplex* requires a determination of whether the zoning restriction as applied interferes with a landowner's reasonable use of the property. *Simplex*, 145 N.H. at 731. This factor includes consideration of the landowner's ability to receive a reasonable return on his or her investment. *Matthew v. Smith*, 707 S.W.2d 411, 416 (Mo. 1986) (en banc). Although "[r]easonable return is not maximum return," *id.* at 417 (quotation omitted), this factor requires more than a "mere inconvenience," *Boccia*, 151 N.H. at 93. This factor, however, does *not* require the landowner to show that he or she has been deprived of all

beneficial use of the land. *See Simplex*, 145 N.H. at 731-32. Rather, this factor should be applied consistent with our sound policy, enunciated in *Simplex*, of being "more considerate of the constitutional right to enjoy property." *Id.* at 731. Nevertheless, "mere conclusory and lay opinion concerning the lack of . . . reasonable return is not sufficient; there must be actual proof, often in the form of dollars and cents evidence." *Matthew*, 707 S.W.2d at 417; *see, e.g., Carter v. Derry*, 113 N.H. 1, 4 (1973) (considering evidence of original cost, current market value and decline in value).

 Next, *Simplex* requires a determination of whether the hardship is a result of the unique setting of the property. *Simplex*, 145 N.H. at 731. This factor requires that the property be burdened by the zoning restriction in a manner that is distinct from other similarly situated property. *Bacon*, 150 N.H. at 478 (Duggan and Dalianis, JJ., concurring specially). It does not, however, require that the property be the only such burdened property. Rather, the burden cannot arise as a result of the zoning ordinance's equal burden on all property in the district. *See* RATHKOPF, *supra* § 58:5, at 58-18 ("This degree of hardship is implicit in zoning; the restrictions on each parcel of property are compensated for by similar restrictions on neighboring property."). In addition, the burden must arise from the property and not from the individual plight of the landowner. *Olszak v. Town of New Hampton*, 139 N.H. 723, 726 (1995). Thus, the landowner must show that the hardship is a result of specific conditions of the property and not the area in general. *Simplex*, 145 N.H. at 731.

Finally, *Simplex* requires consideration of the surrounding environment. *Id.* This includes evaluating whether the landowner's proposed use would alter the essential character of the neighborhood. *Matthew*, 707 S.W.2d at 417. Indeed, because the fundamental premise of zoning laws is the segregation of land according to uses, the impact on the character of the neighborhood is central to the analysis of a use variance. *See Bacon*, 150 N.H. at 477 (Duggan and Dalianis, JJ., concurring specially).

In this case, the following evidence was introduced before the ZBA regarding unnecessary hardship. In his variance application, Wyman stated that the variance to expand the mobile home park was necessary for two reasons: (1) the twenty acres would be "totally unusable" without the variance; and (2) expanding the park would allow for additional income so that he could provide affordable housing and keep the community clean.

The minutes of two public hearings reflect the following evidence of hardship. Wyman reiterated that the variance was necessary for the two reasons stated in his application. In addition, Wyman stated that he was unable to subdivide the property because there was inadequate road frontage and building a road was "almost impossible" due to the location of the campground, the current mobile home park area and swamp land. Wyman also stated that he would be improving the private road that currently serves the park and that these improvements would "meet some of the town specs." Nonetheless, because the private road would not be a town road, Wyman would still not have enough road frontage to subdivide the property. In response to a question regarding the impact on the area, Wyman stated that the variance would provide more affordable housing and make the park more attractive so that it would be a place where people want to live. Negative impacts that were brought to the ZBA's attention included additional children in the schools and increased traffic in an already congested area. Prior to the conclusion of the second public meeting, Wyman was asked to answer specifically how he met each of the five requirements for a variance. With regard to unnecessary hardship, Wyman stated that, "Without [the variance], there is a good chance that I would have to let [the manufactured housing park] go back to the previous owner."

In applying the *Simplex* standard to these facts, we are mindful that we do not act as a super zoning board. *Britton v. Town of Chester*, 134 N.H. 434, 441 (1991). Our inquiry is not whether we would find as the trial court found, but rather whether the evidence before the court reasonably supports its findings. *See Bacon*, 150 N.H. at 471.

Here, sufficient evidence supports the trial court's determination that the ZBA acted reasonably in finding that Wyman met his burden of proving unnecessary hardship. Although Wyman's unsupported conclusion that, without the variance, he might have to let the property "go back to the previous owner" does not warrant the granting of a use variance, *see Boccia*, 151 N.H. at 93 (requiring more than mere inconvenience); *see also* RATHKOPF, *supra* § 58:5, at 58-27 to 58-28 (recognizing that zoning boards and courts will not grant a variance merely to avoid a negative financial impact on the landowner), other evidence in the record supports the trial court's decision.

We first look to the evidence supporting the conclusion that the zoning restriction interferes with Wyman's reasonable use of the property. Most significant to our analysis is that manufactured housing parks are a permitted use in the R-2 zone. This fact is entitled to considerable weight

when evaluating the reasonable use of the property. In addition, if Wyman had adequate road frontage to subdivide his property, he would have sufficient acreage for a manufactured housing park on the new lot.

Next, the evidence supporting the conclusion that the hardship is a result of unique conditions of his property includes: (1) Wyman is unable to subdivide because he has insufficient road frontage; (2) constructing a road that would provide adequate frontage is "almost impossible" because of the current location of the campground, the existing mobile home park and the presence of swamp lands; and (3) the improvements to the private road that services the park would not remedy the inadequacy in road frontage.

■ Finally, the ZBA considered the impact such a large expansion would have on the character of the area, including the impact on the schools, increased traffic, the availability of affordable housing, and the potential of reviving an undesirable area of town. The ZBA also conducted a site walk. In granting the variance, the ZBA implicitly found that the expansion of the park would not adversely affect the character of the area. Notably, the ZBA limited the expansion to five new lots per year in order to lessen the impact on the schools. Moreover, no evidence to the contrary was introduced. Accordingly, the trial court did not err in concluding that the ZBA acted reasonably in finding that Wyman met his burden of proving unnecessary hardship.

### B. Self-created hardship

Next, the abutters argue that because the zoning restrictions preceded Wyman's purchase of the property, he is not entitled to a variance absent special circumstances. We disagree.

In *Hill v. Town of Chester*, we addressed the effect a purchase with knowledge of zoning restrictions has on an applicant's ability to demonstrate unnecessary hardship. *Hill*, 146 N.H. at 293. We recognized that "landowners are deemed to have constructive notice of the zoning restrictions applicable to their property" and that "[a] person who purchases land with knowledge, actual or constructive, of the zoning restrictions which are in effect at the time of such purchase, is said to have created for himself whatever hardship such restrictions entail." *Id.* at 294 (quotation omitted). Nonetheless, we held that a self-created hardship does not preclude the landowner from obtaining a variance. *Id.* Rather, "purchase with knowledge" is a nondispositive factor to be considered under the first prong of the hardship test set forth in *Simplex*. *Id.* at 293.

To counter the fact that the hardship was self-created because the landowner had actual or constructive knowledge of the zoning restrictions, the landowner can introduce evidence of good faith. *See* RATHKOPF, *supra* § 58:21 at 58-135.

> Good faith can be established in several ways: showing that the owner has complied with the rules and procedures of the ordinance; showing that the owner has attempted to use other alternatives to relieve his hardship prior to requesting a variance; showing that the owner had relied on the representations of zoning authorities or builders; or showing that the owner had no actual or constructive knowledge of a requirement, violation, or limitation on land that he purchased.

*Id.*; *see also Badish v. O'Regan*, 212 N.Y.S.2d 632, 634-35 (Sup. Ct. 1961).

Here, Wyman was advised by a letter from the town selectmen prior to purchasing the property that the mobile home park could be expanded, subject to compliance with building ordinances and planning board approval. In addition, Wyman raised the issue of the provision limiting mobile home parks to a maximum of twenty-five sites with the ZBA. The ZBA was uncertain whether the provision allowed twenty-five sites per ten acres of land or whether the provision was an absolute maximum and thus advised Wyman to seek a variance for the proposed expansion.

The record unequivocally establishes that Wyman acted in good faith in following the zoning ordinance and in seeking a variance. Wyman did not create the hardship because of his "failure to plan properly." *Hill*, 146 N.H. at 293. Accordingly, any heightened scrutiny that is warranted by Wyman's actual or constructive knowledge of the zoning restriction under the first prong of *Simplex* is satisfied by the evidence of his good faith.

### C. Other variance criteria

Next, the abutters argue that the trial court erred in ruling that the ZBA acted lawfully and reasonably in finding that Wyman met his burden of showing that the variance was consistent with the spirit of the ordinance, did not detract from the intent or purpose of the ordinance and that substantial justice would be done in granting the variance. We disagree.

Based upon the record of the ZBA hearings, we conclude that sufficient evidence supports these rulings. At the hearings, Wyman showed that the

variance was not contrary to the spirit of the ordinance and did not detract from the intent or purpose of the ordinance because mobile home parks are a permitted use under the ordinance, the mobile home park already exists in the area, the variance would not change the use of the area and, were he able to subdivide, he would have sufficient minimum acreage for the proposed expansion.

In addition, Wyman showed that substantial justice would be done in granting the variance because it would improve a dilapidated area of town and provide affordable housing in the area. Specifically, Wyman explained that all of the lots will meet the minimum size and setback requirements, will be surrounded by a tree buffer, will only allow the use of newer mobile homes and will have upgraded septic systems. Accordingly, the trial court did not err in concluding that the ZBA acted lawfully and reasonably in finding that Wyman met his burden of proving that the variance was consistent with the spirit of the ordinance, did not detract from the intent or purpose of the ordinance and that substantial justice would be done in granting the variance.

## II. Adequate Record

Next, the abutters argue that the trial court failed to provide an adequate basis for appellate review of its decision. Specifically, the abutters argue that, under RSA 491:15 (1997), the trial court's order was inadequate because the court failed to rule on the proposed findings and rulings and failed to address critical legal and factual issues in its narrative order. We disagree.

RSA 491:15 provides: "The court ... shall, if either party requests it, give his decision in writing, stating the facts found and his rulings of law, which shall be filed and recorded." In interpreting RSA 491:15, we have held that

> although a superior court justice sitting without a jury is generally under no obligation to make findings and rulings in support of a decree unless a party asks for them, when either party does request them, RSA 491:15 requires a statement of facts and legal rulings in jury-waived and non-jury cases. The trial judge in such a case need not respond expressly to every specific request filed by a party, but the court is obligated to make findings of the basic or essential facts that are sufficient to support the ultimate decision. This may be done in the narrative form, and the essential rulings of law may be likewise explained.

*Magrauth v. Magrauth,* 136 N.H. 757, 760 (1993) (quotation, brackets and ellipses omitted).

 Here, the trial court made a narrative order setting forth the relevant facts, the standard of review and the applicable law for granting variances. The order reviewed the minutes of the ZBA's meetings and discussed the evidence presented on each of the requirements for a variance. The court then concluded that because the record supports the findings on all the pertinent factors, the ZBA's decision was both reasonable and lawful.

The trial court's order sets forth both sufficient findings of fact and essential rulings of law to support the ultimate decision. *See id.* Although the trial court did not rule on the abutters' proposed findings and rulings, "the trial judge . . . need not respond expressly to every specific request filed by a party." *Id.* Accordingly, the trial court did not fail to provide an adequate basis for appellate review of its decision.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.