Cheshire
No. 2008-500

ROBERT FARRAR & a.

v.

CITY OF KEENE

Argued: February 18, 2009
Opinion Issued: May 7, 2009

*Hoppock & Lachman, PLLC*, of Keene (*Joseph S. Hoppock* on the brief and orally), for the petitioners.

*Leon I. Goodwin, III*, assistant city attorney, and *Thomas P. Mullins*, city attorney, by brief, and *Mr. Goodwin* orally, for the respondent.

*Bradley & Faulkner, P.C.*, of Keene (*Gary J. Kinyon* on the brief and orally), for the intervenor.

DUGGAN, J. The intervenor, Peter Hill, and the respondent, the City of Keene, appeal the decision of the Superior Court (*Arnold*, J.) vacating the decision of the City of Keene Zoning Board of Adjustment (ZBA). The petitioners, Robert Farrar and Jeananne Farrar, cross-appeal. We reverse in part, affirm in part, and remand.

The record supports the following. On January 17, 2007, Hill applied for use and area variances for his property located at 75 Winter Street in Keene. The property is a 0.44 acre lot with a historic building consisting of nineteen rooms and over 7000 square feet of living area. Winter Street runs through two zoning districts — the office district and the center business district. The property at issue is located in the office district.

As to the area variance, Hill requested permission to reduce the number of required onsite parking spaces from twenty-three to ten. The ZBA partially granted Hill's request, decreasing the number of required parking spaces to fourteen. As to the use variance, Hill proposed changing the use from a residential single family dwelling to a mixed use with two residential units and office space. The office district permits both multifamily and office uses, but does not expressly permit mixed use. The ZBA granted Hill's request for a use variance. The Farrars, abutters to the property, moved for rehearing, arguing that the vice chairperson had a conflict of interest and the ZBA erred in granting both variances. The ZBA denied the motion. The Farrars appealed to the superior court.

The superior court found no conflict of interest and affirmed the ZBA's decision on the area variance, but vacated the use variance. As to the latter, the superior court found that Hill failed to submit evidence as to the first prong of the unnecessary hardship test — that the zoning restriction as applied interferes with his reasonable use of the property considering its unique setting in the environment. As to the remaining criteria of the variance standard, the superior court held that the record supported the ZBA's findings that Hill met his burden. This appeal followed.

On appeal, Hill and the City argue that the superior court erred in: (1) overlooking evidence of unnecessary hardship, specifically the large size of

the house, the lot size compared with the number of available parking spaces and the unusual layout of the district; (2) failing to give deference to the ZBA decision and the ZBA members' use of their own personal knowledge; and (3) failing to remand to the ZBA.

The Farrars argue that the superior court correctly found that Hill failed to prove unnecessary hardship, maintaining that Hill's financial hardship is personal and unrelated to any unique characteristic of the property. The Farrars claim that Hill failed to submit "actual proof" to determine if there is a reasonable return on his investment in the property. Alternatively, the Farrars argue in their cross-appeal that the superior court erred in finding there was sufficient evidence before the ZBA for Hill to sustain his burden on the other elements of the use variance standard.

On appeal, we will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. *Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 105 (2007). Our inquiry is not whether we would find as the superior court found, but rather whether the evidence before the court reasonably supports its finding. *Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748, 751 (2007). The ZBA's factual findings are deemed *prima facie* lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. *Malachy Glen Assocs.*, 155 N.H. at 105.

■ To obtain a variance, a landowner bears the burden of showing that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005).

*I. Unnecessary Hardship*

■ Initially, we consider whether the superior court erred by overlooking evidence of unnecessary hardship. To establish unnecessary hardship for a use variance, an applicant must show that: (1) the zoning restriction as applied interferes with the applicant's reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others. *Simplex*

*Technologies v. Town of Newington*, 145 N.H. 727, 731-32 (2001). The superior court based its decision upon the first prong of the *Simplex* standard.

### A. First Prong of Unnecessary Hardship

"As our cases since *Simplex* have emphasized, the first prong of the *Simplex* standard is the critical inquiry for determining whether unnecessary hardship has been established." *Harrington*, 152 N.H. at 80. "A number of nondispositive factors are encompassed within this prong." *Id.* First, "whether the zoning restriction as applied interferes with a landowner's reasonable use of the property." *Id.* Next, "whether the hardship is a result of the unique setting of the property." *Id.* at 81. Finally, "whether the landowner's proposed use would alter the essential character of the neighborhood." *Id.*

The superior court focused upon the first two nondispositive factors. It found that "Hill failed to present the ZBA with evidence of his property's unique setting in its environment," and instead presented evidence of his own personal financial hardship. We disagree.

There was evidence before the ZBA that the property is unique in that it is a large residence that cannot reasonably be used as such consistent with the zoning ordinance. Hill submitted evidence that the property includes a historic building that, unlike the other buildings in the area, is used as a residence. He submitted a partial list of properties in the office district, and represented that his residence is one of the larger buildings. He testified that "the house is not usable for a private family and . . . the location of it and the size of it rule this out." Hill further testified that he is unable to sustain the property as his residence without the additional income. Based upon all the evidence, the ZBA concluded that the "economics [of] trying to maintain it as a private home is [*sic*] understandable."

The ZBA considered that similar large residences have been converted to office space consistent with the zoning ordinance, and that Hill's proposal is a reasonable compromise to keep it as a residence. Jeananne Farrar testified that "there are exquisite old homes throughout downtown . . . that . . . have been snapped up by professionals after the office zone was put into place," and evidence before the ZBA included the fact that the buildings on either side of the property are office buildings. Hill represented that if the ZBA did not grant the use variance, the property would be either office space or torn down. Based upon this evidence, the ZBA could reasonably find that although the property could be converted to office space consistent with the ordinance, the zoning restriction still

interferes with Hill's reasonable use of the property as his residence. *See Harrington*, 152 N.H. at 80-81 (stating landowner not required to show he is deprived of *all* beneficial use of the land).

■ Although Hill submitted minimal evidence of a reasonable return of his investment in the property, this is only one of the nondispositive factors that the ZBA must consider. *See id.* at 80 ("reasonable use" factor "includes consideration of the landowner's ability to receive a reasonable return on his or her investment"). Another factor is whether Hill's proposal would alter the essential character of the neighborhood. *See id.* at 81. To that extent, the superior court did not consider that the office district includes as permitted uses both offices and residences, and, thus, that a mixed office and residential use would not alter the character of this area.

■ After review of the record, we acknowledge that this is a close case. In close cases, where some evidence in the record supports the ZBA's decision, the superior court must afford deference to the ZBA. *See Garrison v. Town of Henniker*, 154 N.H. 26, 29 (2006) (superior court's review in zoning cases is limited). The ZBA, composed of members of the community and having knowledge and understanding of the surrounding area, is in the best position to make decisions regarding use of the land. If the ZBA grants the variance and evidence in the record supports the decision, the superior court should defer to the ZBA's conclusion. *See Ouellette v. Town of Kingston*, 157 N.H. 604, 611 (2008). Here, the superior court did not give such deference to the local board. We thus conclude that the superior court erred in ruling that the record does not support the ZBA's finding of unnecessary hardship.

Because Hill has the burden to prove the five criteria of the use variance test, we also address the Farrars' cross-appeal, in which they argue the superior court erred in concluding that the ZBA did not act unlawfully or unreasonably in finding Hill met his burden regarding the other two unnecessary hardship prongs and the remaining use variance criteria.

*B. Second & Third Prongs of Unnecessary Hardship*

■ As to the second prong of the unnecessary hardship test, the applicant must show that no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property. *Simplex*, 145 N.H. at 732. The superior court found that, on the record, "the ZBA could reasonably conclude that there was no substantial relationship between the general purposes of the zoning ordinance and this specific property." The record supports the superior

court's reasoning for this conclusion; *i.e.*, that mixed uses are allowed in the adjoining district and the variance would not alter the composition of the neighborhood.

 ██ As to the third prong, the applicant must show that the variance would not injure the public or private rights of others. *Id.* We have said that this prong of the unnecessary hardship test is coextensive with the first and third criteria for a use variance. *See Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005). For the reasons stated below, we conclude that the record supports the superior court's determination that the ZBA adequately considered this issue.

*II. Public Interest & Spirit of the Ordinance*

 ██ "The requirement that the variance not be contrary to the public interest is related to the requirement that the variance be consistent with the spirit of the ordinance." *Malachy Glen Assocs.*, 155 N.H. at 105 (quotation omitted). A variance is contrary to the public interest or injurious to the public rights of others if it "unduly, and in a marked degree conflict[s] with the ordinance such that it violates the ordinance's basic zoning objectives." *Chester Rod & Gun Club*, 152 N.H. at 581 (quotation and citation omitted). Because the fundamental premise of zoning laws is the segregation of land according to use, "[o]ne way to ascertain whether granting the variance would violate basic zoning objectives is to examine whether it would alter the essential character of the locality." *Id.* (quotation and citation omitted). "Another approach . . . is to examine whether granting the variance would threaten the public health, safety or welfare." *Id.*

> The Keene Zoning Ordinance states that the office district serves to provide for noncommercial offices within walking distance to the downtown. The uses are intended to be low intensity such as professional offices. This zone is intended also to serve as a buffer between the intense uses such as those in the central business, central business limited, commerce zones, and residential areas.

The record shows that the ZBA found that the mixed office and residential use had "fairly low intensity." The ZBA considered the purpose of the office district as a low intensity buffer zone, and stated that "the apartments may limit the amount of traffic whereas if the whole building were office space, there would be more traffic." The record further reveals that the Farrars were concerned that the property would be used for commercial purposes. Jeananne Farrar testified at the ZBA hearing that she thinks "the owner is attempting to create a commercial use of the property that is in reality

suppose[d] to serve as a buffer between the intense commercial use of downtown and the low residential use . . . ." The ZBA considered the Farrars' concern over commercial use and determined that Hill was requesting mixed office and residential use, and that any argument that the office use is actually commercial is an issue for code enforcement. Thus, the superior court did not err in finding that the ZBA could reasonably conclude that the variance would not be contrary to the public interest or unduly, in a marked degree, conflict with the ordinance.

*III. Substantial Justice*

▮ "Perhaps the only guiding rule [as to the factor of 'substantial justice'] is that any loss to the individual that is not outweighed by a gain to the general public is an injustice." *Malachy Glen Assocs.*, 155 N.H. at 109 (citation omitted). We have also considered whether the proposed use is consistent with the area's present use. *Id.*

Referencing its determination that the ZBA erred in finding unnecessary hardship, the superior court initially stated that the applicant's loss is "difficult to assess" because he "did not present evidence that denial of the variance would interfere with his reasonable use of the property." The superior court, however, nonetheless found that "the ZBA reasonably concluded that the proposed use would not alter the character of the area, injure the rights of others, or otherwise undermine the public interest," and further that "[t]he ZBA's decision that granting the variance would work substantial justice was consistent with the evidence before it and reasonable."

▮ Although we disagree with the superior court's initial finding that denial of the variance would not interfere with the applicant's reasonable use of the property, we agree with the superior court in its ultimate finding concerning substantial justice. The record shows that the applicant currently resides at the property, has made substantial renovations to the property as a residence and is unable to sustain the property as his residence without the additional income from offices. The record also shows that the office district permits both office and residential uses as separate primary uses. Thus, as the superior court concluded, the record supports the ZBA's finding that the variance would work substantial justice.

*IV. Surrounding Property Values*

▮ The superior court found that "the ZBA considered noise, traffic, aesthetics and intensity of use in considering what effect, if any, the variance would have on surrounding property values." The superior court also found that the ZBA acted reasonably and within its authority in

"deciding that the proposed use would not negatively impact the value of the surrounding properties." Our review of the record reveals support for this finding. The ZBA considered that the residential appearance of the building would not change, that there are currently office usages on either side of the property and that if the property was used entirely as an office building — as permitted by the zoning ordinance — there would be greater traffic and intensity.

Accordingly, we reverse the superior court's order vacating the ZBA's decision to grant Hill's use variance application.

*Reversed in part; affirmed in part; and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.