NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2022-0236

JEFFREY E. RAYMOND, TRUSTEE OF J&R REALTY TRUST

v.

TOWN OF PLAISTOW

Argued: March 28, 2023
Opinion Issued: July 28, 2023

Nicosia & Associates, P.C., of Tyngsboro, Massachusetts (Peter J. Nicosia on the brief and orally), for the plaintiff.

Wadleigh, Starr & Peters, PLLC, of Manchester (Charles F. Cleary and William P. Reddington on the brief, and Charles F. Cleary orally), for the defendant.

DONOVAN, J. The plaintiff, Jeffrey E. Raymond, as Trustee of J&R Realty Trust,[1] appeals an order of the Superior Court (St. Hilaire, J.) affirming a decision of the Zoning Board of Adjustment (ZBA) for the Town of Plaistow denying the plaintiff's variance request and upholding the zoning determination of the town's Building Inspector (BI). The plaintiff argues that the court erred

_____

[1] For purposes of this appeal, we refer to the plaintiff as "it" in accordance with the parties' briefs.

in affirming the ZBA's decision because: (1) the record supports the plaintiff's contention that its proposed use of the property falls within the definition of a Trade Business; and (2) the ZBA unlawfully considered prior zoning violations at other properties operated by the plaintiff's anticipated tenant when making its determinations. We conclude that, based upon the plain language of the town's zoning ordinance, the plaintiff's proposed use of the property constitutes a Trade Business. Accordingly, we reverse the trial court's order upholding the ZBA's decision denying the plaintiff's appeal from the BI's zoning determination.

## I. Facts

The following facts are supported by the certified record or are undisputed. The plaintiff owns property located in the town's "Commercial 1" (C1) zoning district. The property consists of a 1.18-acre corner lot at the intersection of Route 125 and Old County Road. The plaintiff seeks to convert the property from its current non-conforming residential use to a commercial use. The plaintiff plans to raze the existing dwelling and construct a two-story, 2,200 square foot office building. Behind the proposed office building, the plaintiff also plans to construct a one and one-half story, 3,400 square foot warehouse building. Ultimately, the plaintiff intends to lease the property to JNR Gutters, Inc. (the company), which intends to relocate its headquarters to the property. The company is a home improvement business engaged in the sale, service, and installation of windows, siding, roofing, decks, and gutters.

As a prerequisite to a site plan application, the plaintiff submitted the proposed development to the town's BI and requested a zoning determination. In October 2020, the BI found the proposed use of the property to be a "Contractor's Storage Yard," which is not a permitted use in the C1 zoning district. Thereafter, the plaintiff appealed the BI's zoning determination to the ZBA, arguing that the BI's determination should be overturned because the proposed use of the property was "more akin to a Trade Business," which is permitted in the C1 zoning district. Specifically, the plaintiff argued that the property would primarily be used as an office and retail showroom and that the development proposal included voluntary stipulations that the company would not store materials or heavy vehicles outside on the site, thereby removing the Contractor's Storage Yard features as defined by the town's zoning ordinance. At the same time and in the alternative, the plaintiff filed a variance application with the ZBA to permit the development of a Contractor's Storage Yard on the property with the same stipulations.

In December 2020 and January 2021, the ZBA conducted public hearings on the plaintiff's appeal and variance application. At both hearings, the ZBA questioned the plaintiff about ongoing zoning violations at another

2

property operated by the company in Plaistow,[2] as well as the condition of the company's current headquarters in Haverhill, Massachusetts. The plaintiff represented that the company intended to relocate some of the materials causing the violations at the existing Plaistow site to the warehouse of the proposed development. Therefore, counsel for the plaintiff asserted, "allowing this site to be developed would likely cure the issues with the existing site." The ZBA noted that "it was difficult to rely on voluntary compliance when there are already violations," and explained that in light of these "existing long-term, unresolved issues," their concern with the plaintiff's stipulations "was more of a trust issue." At both hearings, a ZBA member expressed concern about enforcement costs and noted that the town would bear the costs of any future enforcement action.

In January 2021, the ZBA voted to deny the plaintiff's appeal and variance application. Specifically, the ZBA found that, as to the plaintiff's variance request, "the primary use of the business" is "industrial in nature," which is contrary to the intent of the ordinance. Accordingly, the ZBA determined that the plaintiff had not met the statutory requirements for granting a variance.

In upholding the BI's zoning determination, the ZBA noted that the company referred to itself as "contractors" on its website. Additionally, given the prior violations at the other property in the town, the ZBA noted that the "lack of trust" remained an issue, particularly when it would be relying upon the plaintiff's stipulations to comply with the zoning ordinance. The ZBA took into account that the plaintiff proposed moving some of the materials causing the violations at the existing site to the proposed warehouse, but observed that a bulldozer had been stored at the undeveloped proposed site, thereby indicating a compliance issue given that the zoning ordinance prohibits a Trade Business from storing heavy construction equipment. See Plaistow, N.H., Zoning Ordinance, art. II, § 220-2 (2022) (hereinafter, "Ordinance"). Ultimately, the ZBA denied the plaintiff's zoning appeal. The plaintiff moved for rehearing, which the ZBA denied.

The plaintiff appealed to the superior court, arguing that the ZBA's denial of its appeal of the BI's zoning determination contained insufficient findings as required by law, and that the ZBA's denials of its appeal of the BI's zoning determination and its variance application were not supported by the record. The plaintiff also argued that "the ZBA's decisions [were] unlawful and

_____

[2] We note that Jon Raymond, individually, is the property owner of 213 Main Street — the other property in Plaistow operated by the company. The record further demonstrates that Jon Raymond is involved in the business operations of the company. Although only Jeffrey Raymond is identified as a trustee of J&R Realty Trust, the plaintiff's application for appeal and variance request before the ZBA identifies Jon Raymond as a contact for the trust and indicates that the trust utilizes the same mailing address as the company's headquarters in Haverhill, Massachusetts.

unreasonable because they were influenced by improper considerations," including the ZBA's inquiries and concerns with the company's Plaistow property and headquarters in Haverhill, Massachusetts. (Emphasis omitted.)

In March 2022, the court issued an order upholding the ZBA's decisions. The court opined that the ZBA members properly used their own knowledge, experience, and common sense, as well as the "[t]own's own records," when considering the ongoing violations at the other property operated by the company in the town. Further, the court determined that these zoning violations at another Contractor's Storage Yard in the town were both "highly relevant and appropriate for a ZBA member to consider" when denying the plaintiff's variance request. The court also found that the ZBA's decisions contained sufficient written findings and that the plaintiff "failed to show" that the ZBA committed errors of law or that its decisions were unreasonable. This appeal followed.

Following briefing and oral argument, we issued an order on April 11, 2023, remanding this case to the superior court for it to articulate the legal bases and factual evidence supporting its ruling that the ZBA properly determined that the plaintiff's proposed use of the property was more akin to a non-permitted Contractor's Storage Yard than a permitted Trade Business. We otherwise retained jurisdiction of the appeal.

On April 20, 2023, the superior court issued an order stating that, based upon the totality of the ZBA's discussions at both hearings, it "reiterates its conclusion that the [ZBA's] decision to uphold [the BI's] determination was reasonable." The court observed that although the ZBA spent the majority of both hearings discussing the plaintiff's variance application, afterwards "the ZBA thoroughly discussed" the plaintiff's appeal from the BI's zoning determination. The court reasoned that the time the ZBA devoted to deliberating its zoning determination did not suggest that the ZBA failed to sufficiently consider the plaintiff's appeal from the BI's zoning determination, because the "same points" raised during deliberation of the variance application applied to the zoning determination. Specifically, the court found that evidence reflecting "habitual zoning violations" at the company's Plaistow property supported the ZBA's decision not to credit the plaintiff's representations that the company would not store outdoor materials or heavy equipment on the site. Accordingly, the court found that the ZBA's decision not to credit the "[p]laintiff's concessions on those points supported a finding that the proposed use was more akin to a Contractor's Storage Yard."

## II.     Analysis

Because we retained jurisdiction following remand, we consider both superior court orders to determine whether the trial court erred in upholding the ZBA's zoning determination. "For its part, the trial court, in reviewing the

decision of a zoning board of adjustment, is limited to a determination of whether, on the balance of the probabilities, the decision was unlawful or unreasonable." Rochester City Council v. Rochester Zoning Bd. of Adjustment, 171 N.H. 271, 275 (2018) (quotation omitted). "To the extent the ZBA made findings upon questions of fact properly before the court, those findings are deemed prima facie lawful and reasonable." Id. (quotation omitted); see RSA 677:6 (2016). "The review by the superior court is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based." Rochester City Council, 171 N.H. at 275 (quotation omitted).

"We will uphold the superior court's decision on appeal unless it is unsupported by the evidence or legally erroneous." Rochester City Council, 171 N.H. at 275 (quotation omitted). "[W]e are mindful that we do not act as a super zoning board." Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019) (quotation omitted).

The plaintiff argues that the trial court erred in upholding the BI's zoning determination because the property's proposed use is more akin to a "Trade Business," which is permitted in the town's C1 zoning district. According to the plaintiff, the "decisions of both the ZBA and the Superior Court" upholding the initial zoning determination of a Contractor's Storage Yard "are inconsistent with the plain language of the zoning ordinance and are devoid of factual support in the [record]."

Resolving this issue requires that we interpret the language of the town's ordinance. The interpretation of an ordinance presents a question of law, which we review de novo. Town of Carroll v. Rines, 164 N.H. 523, 526 (2013). We construe the words and phrases of an ordinance according to the common and approved usage of the language. Id. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. Id.

The town's zoning ordinance provides the following relevant definitions:

TRADE BUSINESS — A business enterprise which holds [the] necessary state and local licenses to provide trade services directly to the ultimate consumer. Such examples would be electricians, plumbers, and HVAC contractors. This does not include businesses such as landscaping or construction contractors that typically call for outdoor storage of materials.

. . . .

CONTRACTOR'S STORAGE YARD — A site upon which heavy vehicles and equipment (such as bulldozers, front-end loaders, and back-hoes)

5

and materials, supplies and forms, used by professional contractors in construction, land clearing, site work, utilities, landscaping, or other similar activities are stored, including waste disposal containers. Land upon which any of the above items are temporarily stored on-site during the course of an active construction project shall not be considered a contractor's storage yard.

Ordinance, art. II, § 220-2. Here, the plaintiff proposed constructing an office building for the company's management, administrative, and sales teams. The plaintiff also explained that the company intended to establish a retail showroom in the office building to provide trade services directly to consumers. Behind the office building, the plaintiff proposed constructing a 3,400 square foot warehouse building to store all materials sold to the public. The plaintiff represented that the company intended to relocate "light vehicles" to the site, which included pick-up trucks, vans, box trucks and trailers, as well as "small boom lifts" to be used for snow removal. The plaintiff also represented that the company would not store any heavy equipment, such as bulldozers or backhoes, on the proposed site.

On this record, we conclude that, based upon the plain language of the ordinance, the plaintiff's proposed use of the property falls within the definition of a Trade Business. It is undisputed that the plaintiff's proposed use included the primary function of a Trade Business as defined by the ordinance: operating a retail showroom "to provide trade services directly to the ultimate consumer." Id. However, when addressing the BI's zoning determination, one ZBA member commented that "the applicant's website calls out that they do specific contracting work" and another member noted that "they refer to themselves as contractors on their website." These statements suggest that the ZBA relied upon these references to "contractors" and "contracting work" as a basis for excluding the plaintiff's proposed use from the definition of Trade Business. Yet, the ordinance expressly provides examples of a Trade Business that include "electricians, plumbers, and HVAC contractors." Id. (emphasis added). Accordingly, the plain language of the ordinance includes contractors within the definition of Trade Business when, as here, the contractor is engaged in a business enterprise offering trade services to consumers.

Moreover, whether the company engages in "construction" work would not, alone, exclude the plaintiff's proposed use from the definition of a Trade Business. Rather, we construe the plain language of the ordinance as prohibiting construction contractors only when their proposed use calls "for outdoor storage of materials." Id. Here, the plaintiff represented that the company intended to store all materials inside the 3,400 square foot warehouse building, which will be twice the size of the company's existing 1,600 square foot warehouse at the other property operated by the company in the town.

6

The trial court found that in denying the plaintiff's appeal from the BI's zoning determination, the ZBA decided not to credit the plaintiff's assurances that the company would not store materials outside or heavy equipment on site. The court also found that evidence of the company's "habitual zoning violations" at the company's other property in the town supported the ZBA's decision not to credit the plaintiff's assurances. On that basis, the court affirmed the ZBA's determination that the plaintiff's proposed use of the property is more akin to a Contractor's Storage Yard.

We conclude that the ZBA erred in considering evidence of the purported zoning violations at the other Plaistow property when it affirmed the zoning determination and that the trial court erred by relying upon this same evidence to uphold that decision.[3] When making a zoning determination, the ZBA must consider whether the proposed use as presented in the application falls within the definition set forth in the ordinance and not anticipate that the company might later violate the ordinance by a use not authorized. See Miklus v. Zoning Bd. of App. of Town of Fairfield, 225 A.2d 637, 639 (Conn. 1967) (holding that the board considered "[t]he application as presented to the board" and that the board "is not required to anticipate that the applicant would later violate the zoning regulations by a use not authorized"); see also Armstrong v. Zoning Board of Appeals, 257 A.2d 799, 804 (Conn. 1969) (same). Should such a violation occur in the future, the town's proper remedy would be to enforce the applicable zoning ordinance at that time. See Farrar v. City of Keene, 158 N.H. 684, 692 (2009) (holding that any argument that the property would actually be used for commercial as opposed to mixed office and residential use "is an issue for code enforcement"); see also Miklus, 225 A.2d at 639; Armstrong, 257 A.2d at 804.

Consequently, we conclude that, based upon the plain language of the ordinance, the plaintiff's proposed use constitutes a Trade Business. Accordingly, we reverse the ZBA's decision denying the plaintiff's appeal from the BI's zoning determination and the trial court's orders upholding that decision. In light of our conclusion, we need not address the plaintiff's remaining arguments.

Reversed.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

_____

[3] We note that, to the extent the ZBA relied upon the condition of the company's headquarters in Massachusetts, any such reliance was improper, given that the record includes no information as to the permitted uses and zoning ordinances regulating that out-of-state property. Similarly, the ZBA's observation that a bulldozer had been stored on the undeveloped site is immaterial to the zoning determination.